IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIAN THOMPSON,                     :        CIVIL ACTION

               Plaintiff,        :        No. 2:23 CV 04742-PD

                             :

       -V-                                :        JURY TRIAL DEMAND

MOHAMED SAFA, (Sergeant),

                             :

               Defendants.

                             :

## PLAINTIFF'S BRIEF TO DEFENDANTS MOTION TO PARTIALLY DISMISS PLAINTIFF'S COMPLAINT

## I. INCLUSION CLAUSE

Plaintiff incorporates in their entirety, his complaint, (Cmpt. Hereafter), its exhibits, attachments and arguments, and sets forth the same herein at length.

## II. INTRODUCTION

This matter involves the Pro Se litigation of Brian Thompson verses Mohamed Safa for the deprivation of rights and injuries sustained as a direct result of the Defendant's acts, omissions and violation of Plaintiff's civil rights while acting under the color of state law. Plaintiff filed a complaint on or about October 17, 2023, in the Court of Common Pleas, Montgomery County, Pennsylvania. *The complaint is attached hereto as EXHIBIT-A.* The Attorney General's Office sought to have this matter removed to federal court pursuant to 28 U.S.C. 1443, et seq. Pursuant to Fed.R.Civ. P. 12(b)(3), Counsel for the Defendant subsequently filed a motion to dismiss at (ECF-7). Plaintiff hereby files this

response in opposition to that motion.

### III. STATEMENT OF RELEVANT FACTS

Plaintiff states that on March 29, 2023, after receiving his food tray he went to a table to check if there were any food items missing. (Cmplt. at ¶¶6-7). While Plaintiff was standing at the table, Defendant Safa started "yelling and screaming at Plaintiff stating, 'Take it in your cell.'" *Id* at ¶8. This prompted Plaintiff to tell Defendant Safa "I am filing a grievance for you yelling at me." *Id* at ¶9.

Two days later, Plaintiff pressed the call button to leave his cell to work with the rest of the block workers; however, Plaintiff's door did not open. *Id* at ¶11. Corrections Officer Watson, (a non-party), explained to Plaintiff that neither his name, picture, nor hours were in the block workers book. *Id* at ¶13. As such, on April 3, 2023, Plaintiff filed grievance (# 1027496) against Defendant Safa for removing Plaintiff from his work assignment. *Id* at ¶ 14. Plaintiff alleged that Defendant Safa retaliated against Plaintiff for filing a grievance. *Id* at ¶15.    Lieutenant McCafferty, (a non-party) issued the initial review response to Plaintiff's grievance which stated that Plaintiff was not fired from his work assignment but, rather, there was a rotation of workers due to the volume of workers and to allow Plaintiff to have days off. *Id* at ¶¶17-18. Upon appeal of Plaintiff's grievance, Ms. Moore, (a non-party) reiterated. Lieutenant McCafferty's explaination for why Plaintiff was rotated. *Id* at ¶19. However, Plaintiff avers that he was the only block worker whose name, picture and cell were removed from the workers book. *Id* at ¶22. As a result of the filing of grievance (# 1027496), Defendant Safa submitted a negative work report against Plaintiff. *Id* at ¶25. On April 27, 2023, Plaintiff saw Unit Manager Mandee Baldwin, (A non-party) regarding the negative work report and asked if Baldwin would provide Plaintiff a copy of the report. *Id* at ¶28. However, Baldwin stated that she would not, and that Plaintiff should speak to Defendant Safa. *Id.* Subsequetly, on May 1, 2023, Plaintiff filed grievance (#1032183),

stating that Defendant Safa gave Plaintiff a negative work report because Plaintiff filed grievances on the Defendant. *Id* at ¶30-31. In response to Plaintiff's most recent grievance, Captain Young, (another non-party) stated in his initial review, "Staff do not retaliate against inmates for filing grievances." *Id* at ¶35. Later on, either the week of August 7th or 14th, Plaintiff requested a copy of the negative work report issued by Defendant Safa but was denied. *Id* at ¶38.

Plaintiff's second cause of action for cruel and unusual punishment arises from April 3, 2023, when Plaintiff's cellmate, Joel Muir, heard Defendant Safa say to inmate Michael Ortiz, "Those guys in 2027 (Plaintiff's cell), are rats; [T]hey filed grievances on me." *Id* at ¶ 39; *See (Ex-B Affidavit Michael Ortiz)*. Plaintiff avers that Defendant Safa has continued this conduct by referring to Plaintiff as a "snitch". *See (Ex-C Affidaivit of Malik Carter)*. As a result of this incident, Plaintiff filed grievance (#1029617) on April 15, 2023. *Id* at ¶41. However, on review and appeal of Plaintiff's grievance (#1029617), it was denied. *Id* at ¶¶ 43-45. Plaintiff averred that Defendant Safa's remarks which labeled Plaintiff a snitch in front of other inmates endangered his health and safety. *Id* at ¶46; *See (Ex-B & C Affidavits of Michael Ortiz and Malik Carter)* Plaintiff averred that Defendant Safa's remarks which labeled Plaintiff a snitch in front of other inmates was done to facilitate an assault against Plaintiff. *Id* at ¶47. Plaintiff averred that Defendant Safa, having years of experience knew or should have known that labeling a prisoner a snitch in any contenxt would likely result in the Plaintiff being assaulted by another inmate or ostracized; *Id* at ¶48. Plaintiff averred the conclusions of the above civil right violations. *Id* at ¶¶49-50).

In sum, Plaintiff's alleges violations of his First and Eighth Amendment Rights as well as a state law tort for retalaition/faclitating assault. *Id* at ¶¶59(a)-(c), 6¶1, 7¶2, ¶84 and ¶ 92.


## IV. LEGAL FRAMEWORK

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual and well-pleaded allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (alterations, quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)); See also Iqbal, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

## V. STANDARD OF REVIEW

However, courts must liberally construe pleadings that are filed pro se. _Erickson v. Pardus_, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting _Estelle v. Gamble_, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). Thus, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id. (internal quotation marks omitted). See also _Dluhos v. Strasberg_, 321 F.3d 365, 369 (3d Cir. 2003) ("[The Court will] apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name."). But while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim," _Owens v. Armstrong_, 171 F. Supp. 3d 316, 328 (D.N.J. 2016) (_quoting Mala v. Crown Bay Marina, Inc_., 704 F.3d 239, 245, 58 V.I. 691 (3d Cir. 2013)). As a practical matter this "means that a pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" _Brown v. Dep't of Corr._, PA, 2006 WL 895039, at * 2 (W.D. Pa. Mar. 29, 2006) (quoting _Haines v. Kerner_, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)). Courts are to construe pro se complaints so as to do substantial justice, keeping in mind that pro se complaints in particular should be construed liberally. _Alston v. Parker_, 363 F.3d 229, 234 (3rd Cir. 2004).

## _VI. COUNTER ARGUMENT_

**A.    Defendant Safa, in his Offical Capacity as a State Employee, is not a "Person" subject to Section 1983.**

Pursuant to Fed. R.Civ.P. 8, Plaintiff **ADMITS** to the Allegations made by the Defendant in this specific sub-paragragh;  Answer by further response: Plaintiff avers that he does not dispute that Official Capacity does not apply to Plaintiff's complaint as no injunctive relief is sought from either this Defendant and/or from the Pennsylvania

Department of Corrections. Plaintiff further avers that absent a request for injunctive relief, it is presumed that the Defendant is being sued in his Individual Capacity under 1983.

Wherefore, Plaintiff does not dispute that a claim against the Defendant in his Official Capacity is not present.

**B.    Plaintiff Fails to Adequately Plead a Violation of His Eighth Amendment    Rights .**

Pursuant to Fed. R.Civ.P. 8, Plaintiff Specifically **DENIES** the Allegations made by the Defendant in this specific sub-paragraph; Answer by further response: Plaintiff stated a claim upon which relief could be granted. The Defendant did in fact violate Plaintiff's Eigtht Amendment rights against cruel and unusual punishments by subjecting Plaintiff to either being ostracized and/or placed in danger of being assaulted by other inmates.

Initially, the Eighth Amendment of the United States Constitution imposes a duty on prison officials to "take reasonable measures to guarantee the safety of inmates." _Hudson v. Palmer_, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). This includes the general duty to "protect prisoners from violence at the hands of other prisoners." _Hamilton v. Leavy_, 117 F.3d 742, 746 (3d Cir. 1997) (quoting _Farmer v. Brennan_, 511 U.S. 825, 833, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). To state a viable failure-to-protect claim, the plaintiff must establish that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was deliberately indifferent to that substantial risk; and (3) the defendant's deliberate indifference caused the plaintiff to suffer harm. _Bistrian v. Levi_, 696 F.3d 352, 367 (3d Cir. 2012), abrogated on other grounds by _Mack v. Yost_, 968 F.3d 311 (3d Cir. 2020). The standard for deliberate indifference is subjective; thus, the prison official "must actually have known or been aware of the excessive risk to inmate safety." _Beers-Capitol v. Whetzel,_ 256 F.3d 120, 125 (3d Cir. 2001).

Plaintiff avers that Defendant knew or was aware of the excessive risk to Plaintiff as being labeled a "snitch" in prison is the worst label a prisoner could have, which it is argued has always, sooner or later, resulted in an assault or being ostracized by the prison community.

Being labeled a "snitch" or a "rat" can be a dangerous designation in prison. See, e.g., _Easley v. Tritt_, 2021 U.S. Dist. LEXIS 48883, 2021 WL 978815, at *13 (M.D. Pa. Mar. 16, 2021) (citing _Moore v. Mann_, 823 Fed. Appx. 92, 96 (3d Cir. 2020) (per curiam) (recognizing that "other circuits have held that prison officials' failure to protect an inmate labeled a 'snitch' constitutes deliberate indifference"). Finding that a prisoner had stated a failure to protect claim, the Court of Appeals for the Third Circuit has held that a prisoner was exposed to a substantial risk of harm when it became known to other inmates that he was cooperating with an FBI investigation into gang activity. _Bistrian v. Levi_, 696 F.3d 352, 368-70 (3d Cir. 2012). The District Court has also held that a plaintiff stated a failure to protect claim when a corrections officer "was deliberately indifferent to [the plaintiff's] safety when he called plaintiff a 'snitch' in front of other inmates....and told other inmates that plaintiff was 'working with prison security.'" _Brown v. Shrader_, 2015 U.S. Dist. LEXIS 112317, 2015 WL 5027510, at *3 (W.D. Pa. Aug. 25, 2015). This created a substantial risk of harm that other inmates would punish the plaintiff for cooperating with prison officials. Id. (citing _Bistrian_, 696 F.3d at 371).

It is established that calling an inmate a snitch for complaining to corrections officers about another inmate when stated in front of other prisoners creates a substantial risk of harm from inmates seeking to punish that so-called snitch or keep him silent. See _Benefield v. McDowall_, 241 F.3d 1267, 1270-71 (10th Cir. 2001) (allegation that defendant spread rumors inmate was snitching on other inmates to prison investigations staff created substantial risk of harm).

Despite the Defendant citing one unreported, non-precedential opinion issued by a magistrate; _Jackson v. O'Brian_, C.A. No. 18-00032, 2021 WL 3174687 at *4 (W.D. Pa. July

27, 2021), some courts have also held that labeling an inmate a snitch created a substantial risk of harm in contexts where it was ambiguous if the defendant meant that the inmate was snitching on prison officials or other inmates. *See (EX-C Affidavit of Malik Carter) also;* See, e.g., _Rodriguez v. Hayman_, 2009 U.S. Dist. LEXIS 109515, 2009 WL 4122251, at *7 (D.N.J. Nov. 23, 2009) ("An inmate being labeled a snitch creates a substantial risk of harm."). The Third Circuit concluded that there was "a genuine dispute regarding whether the defendants were deliberately indifferent to the risk of telling other inmates that [an inmate] was gay, a pedophile, or a snitch." _Moore_, 823 Fed. Appx. at 96. The court in Moore relied on other circuit court of appeals decisions to conclude that "prison officials' failure to protect an inmate labeled a 'snitch' constitutes deliberate indifference." Id. (citing _Irving v. Dormire_, 519 F.3d 441, 451 (8th Cir. 2008) ("_After all, who better knows the opprobrium and consequent effect thereof that attaches to the label of snitch than those who work daily within the inmate population_."); _Benefield_, 241 F.3d at 1271; _Northington v. Marin_, 102 F.3d 1564, 1567 (10th Cir. 1996)). Even though the plaintiff in Moore had not been assaulted, the court said that "_an inmate need not wait until an actual attack occurs to obtain relief_." Id.    Moreover, it is a relevant consideration whether the plaintiff is in the presence of other inmates because an inmate is not put at a substantial risk of harm by being called a snitch with no one around; it is being around other inmates that makes a difference. See _Hendrickson v. Emer. Med. Servs_, 1996 U.S. Dist. LEXIS 13561, 1996 WL 472418, at *5 (E.D. Pa. Aug. 20, 1996) (citations omitted). Plaintiff avers that other inmates overheard Defendant Safa's remarks. *See (EX-C Affidavit of Malik Carter).* Plaintiff avers that the circumstances in _Hendrickson_ are akin to those in this case. Where the Defendant, with the intent to be heard by other inmates, labeled the Plaintiff a snitch, and did so knowing that by doing so, would result in Plaintiff being both ostracized and untimately assaulted. The misconceived notation in the _Jackson v. O'Brian_, C.A. No. 18-00032, 2021 WL 3174687 at *4 (W.D. Pa. July 27, 2021), case is that a staff member labeling a prisoner a

snitch as directed only at staff somehow negates any threat posed at the Plaintiff. What the court failed to comprehend is rumors spread rapidly in  a prison setting from one inmate to another, and by the end of the day, what started out as it being reported that an inmate told only on a staff memeber, within minutes results in the tale that the inmate ratted on ten inmates to security. In short, regardless of the context during the initial comment by staff, and who the "snitching" was directed against, such a term in a prison setting always results in words being twisted and misrepresented by other inmates, either inadvertently or for the purposes of just causing problems for others. *See (Ex-D Affidavit of Caleb Butler)* What started out as the Plaintiff is a "rat" for filing grievances on the Defendant has now morphed into the Plaintiff "telling on everything". This circumstance is why such a label "snitch" must be held by the courts in any circumstance, as being forbidden, as staff do so with the knowledge that doing so endangers the prisoner, and staff do so with only one purpose, to retaliate against the prisoner, knowing it will likely cause the prisoner to experience some type of adverse action in the very near furure.

Plaintiff argues that an inmate may experience an adverse action when a prison official calls him a snitch for complaining about other inmates. *Bistrian*, 696 F.3d at 371; *Brown*, 2015 U.S. Dist. LEXIS 112317, 2015 WL 5027510, at *3. Calling an inmate a snitch may also be an adverse action where the context is ambiguous to a reasonable listener as to whether the official means that the inmate is snitching on other inmates ***or complaining about prison officials***. See *Simmons v. Overmyer*, 2019 U.S. Dist. LEXIS 221399, 2019 WL 7283318, at *7 (W.D. Pa. Dec. 27, 2019) (corrections officer "loudly accused [plaintiff] of being a snitch and a rat in front of other inmates immediately after learning that [plaintiff] had initiated a lawsuit against his previous correctional institution."); *Bracey v. Pa. Dep't of Corr.*, 2012 U.S. Dist. LEXIS 31286, 2012 WL 750911, at *9 (W.D. Pa. Feb. 17, 2012) ("being publicly referred to as a 'snitch'" by a corrections officer *is an adverse action*). Cf. *Moore*, 823 Fed. Appx. at 96; Rodriguez, 2009 U.S. Dist. LEXIS 109515, 2009 WL 4122251, at *7

("An inmate being labeled a snitch creates a substantial risk of harm" for a failure to protect claim).

Plaintiff argues that the above authorites clearly negate the Defendant's argument that being referred to as a snitch when only directed toward staff flies in the face of common sense, and is contrary to many authorities. It was held that the District Court erred in finding that _Moore_ has not submitted any facts suggesting deliberate indifference by the defendants. See _Higgs v. AG of the United States_, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established.").

Plaintiff argues that the affidavits attached to this response demonstrates the perception of other inmates that what was said outloud by the Defendant was interpreted by other inmates as the Plaintiff being a rat in general. _See (Ex-D Affidavit of Caleb Butler)_ also  See _Hamilton_, 117 F.3d at 747 ("A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by circumstantial evidence.") (citing _Farmer_, 511 U.S. at 839). The label snitch is stigmatizing in the prison context, and that prison norms may call for the assault of snitches. See _Renchenski v. Williams_, 622 F.3d 315, 326 (3d Cir. 2010). Similarly, other circuits have held that prison officials' failure to protect an inmate labeled a "snitch" constitutes deliberate indifference.

The Defendant argues that Plaintiff has not shown that he was assaulted or suffered any harm. But an inmate need not wait until an actual attack occurs to obtain relief. See _Helling v. McKinney_, 509 U.S. 25, 33, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993); _Betts v. New Castle Youth Dev. Ctr._, 621 F.3d 249, 257 (3d Cir. 2010); see also _Benefield_ 241 F.3d at 1270-72 (inmate allegations that officer labeled him a snitch in front of other inmates, even though inmate had not in fact been assaulted, stated a claim under Eighth Amendment); _Farmer v. Brennan_, 511 U.S. 825, 833, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). There is no question as to whether the risk of assault is still present and serious, and whether Plaintiff showed a sufficient likelihood that such injury will result from the

Defendants' conduct by the affidavits attached hereto. Cf. _Betts_, 621 F.3d at 257.

**C.    Due to the Lack of Clearly Established Law Defendant is Entitled to   Qualified Immunity.**

Pursuant to Fed. R.Civ.P. 8, Plaintiff Specifically **DENIES** the Allegations made by the Defendant in this specific paragragh; Answer by further response: The Defendant is not entitled to Qualified Immunity as the Defendant's prohibited conduct was well established law.

The Defendant speciously argues that the Defendant labeling Plaintiff as a snitch toward **_staff_** only, did not pose a substantial threat or risk of violence as such a label is not the equivalent of an inmate being labeled a snitch when directed towards another inmate, thus the Defendant is entitled to qualified immunity. Plaintiff argues that the Law of the Case Doctrine Applies. Unlike the more "'precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case.'" _In re Pharmacy Benefit Managers Antitrust Litig._, 582 F.3d 432, 439 (3d Cir. 2009) (quoting _Arizona v. California_, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983)). The "[law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." Id. (internal quotation marks and citation omitted); _Williams v. Runyon_, 130 F.3d 568, 573 (3d Cir. 1997) (holding that the law of the case doctrine applies to a pre-trial ruling that constitutes judgment as a matter of law).

Under the doctrine of "qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" _Beers-Capitol v. Whetzel_, 256 F.3d 120,

142 n.15 (3d Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). To determine whether a government official is entitled to qualified immunity, a court must: (1) determine whether the facts produced would permit a reasonable jurist to find that the official violated a constitutional right and (2) consider whether the right was clearly established at the time of the relevant conduct. *Rodriguez v. Hayman*, No. 08-CV-4239 (RBK/KMW), 2009 U.S. Dist. LEXIS 109515, 2009 WL 4122251, at *9 (D.N.J. Nov. 23, 2009).

Regarding the first step of the inquiry, it cannot be disputed that it is well establsihed federal law that subjecting a prisoner to assualt by labeling him a snitch violates his civil rights; *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997); *Irving v. Dormire*, 519 F.3d 441, 451 (8th Cir. 2008) ("*After all, who better knows the opprobrium and consequent effect thereof that attaches to the label of snitch than those who work daily within the inmate population*."); *Benefield*, 241 F.3d at 1271; *Northington v. Marin*, 102 F.3d 1564, 1567 (10th Cir. 1996)).

Regarding the second step of the inquiry, since the Supreme Court decided *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) in 1994, "a prison official's duty to protect a prisoner from violence at the hands of other prisoners when the official knows of a heightened risk of harm has been 'well-established.'" Id. As a result, the Defendant is not entitled to qualified immuniy as his malfeasance, and the danger he subjected the Plaintiff to was well established federal law.

**D.    Plaintiff's claim for Declaratory Judgment is not an independent Cause of Action.**

Pursuant to Fed. R.Civ.P. 8, Plaintiff Specifically **DENIES** the Allegations made by the Defendant in this specific paragragh; Answer by further response: The Plaintiff makes his request for declaratory judgment two fold. First that Pennsylvania is a fact pleading state, and that if Plaintiff failed to cite a specific cause of action, that the court state it for the

Plaintiff; Second, for the reasons stated above, Plaintiff absolutely made out a cause of action for which relief may be granted.

To that end, "[U]nder Pennsylvania's fact pledings system, the complaint need only state the material facts upon which a cause of action is based. Fed.R.Civ.P. 8. _Grossman v. Barke_, 868 A.2d 561, 569 (Pa. Super. 2005)(Citations Omitted) See also, _id_ at 568-569 (Stating that "[e]ven though [The Plaintiff] did not separate his factual allegations into separate counts specifying the legal theories underlying the complaint, the trial court was obligated to consider what causes of action were supported by the facts alleged").(Quoting, _Rellick Smith v. Rellick_, 147 A.3d 897, 900 (Pa. Super. 2016).

Plaintiff seeks the court to declare Plaintiff's rights were violated by the Defendant. Whereas, any judgment in equity so allowable under any cause of action not specifically stated (or set out) within the causes of actions, but to which the elements to such a claim has been made out, Plaintiff seeks the Court to determine such a cause of action under the applicable law. _Grossman v. Barke_, 868 A.2d 561, 568-569 (Pa. Super. 2005)(Citations Omitted)("The duty to discover the cause or causes of action rests with the trial court").

## VII. CONCLUSION

WHEREFORE, Plaintiff prays that this Honorable Court will DENY the Defendant's motion to PARTIALLY DISMISS PLAINTIFF'S COMPLAINT.

Respectfully Submitted,

Brian Thompson

Date: February 16, 2024

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


BRIAN THOMPSON,                    :
    Plaintiff,                  :        CIVIL ACTION No. 23-cv-4742
                                :
    v.                          :
                                :        JURY TRIAL DEMANDED
MOHAMED SAFA,                      :
    Defendants.                 :
                                :
                                :


## CERTIFICATE OF COMPLIANCE

    I, Brian Thompson, Plaintiff *Pro se'*, do hereby certify that this filing complies with th Unified Judicial System of Pennsylvania;Case records of the trial Courts that requires filing confidential informationand documents differently than non-confidential information and documents.


_Brian Thompson_
Brian Thompson/JQ0773
1200 Mokychic Drive
Collegeville, PA 19426
(Mail By Court Only)

_Brian Thompson_
Brian Thompson/JQ0773
P.O. Box 33028
St.Petersburg, FL 33733
(Mail By Defendants)


Date: _February_ _16_ ,2024

3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIAN THOMPSON,                      :
    Plaintiff,                  :      CIVIL ACTION No. 23-cv-4742
                                      :
    v.                          :
                                        :      JURY TRIAL DEMANDED
MOHAMED SAFA,                        :
    Defendants.                 :
                                        :
                                        :

## CERTIFICATION STATEMENT

    I, Brian Thompson, Plaintiff *Pro Se'*, have read the foregoing documents and hereby verify that the matters alleged herein are true, except to those matters alleged upon information and belief, and, to those matters I believe to be true. I certify under penalty of perjury that the foregoing is true and correct pursuant to 18 Pa. C.S.A. §4904/28 U.S.C.§ 1746.


Brian Thompson/JQ0773                Brian Thompson/JQ0773
1200 Mokychic Drive                  P.O. Box 33028
Collegeville, PA 19426               St.Petersburg, FL 33733
(Mail By Court Only)                 (Mail By Defendants)


Date: February 16 ,2024

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIAN THOMPSON,                      :
    Plaintiff,                       :     CIVIL ACTION No. 23-cv-4742
                                     :
    v.                               :
                                     :     JURY TRIAL DEMANDED
MOHAMED SAFA,                        :
    Defendants.                      :
                                     :
                                     :
                                     :

## CERTIFICATE OF SERVICE

I, Brian Thompson, Plaintiff *Pro Se'*, hereby certify that I am on this day serving the foregoing document(s) on the person(s) and in the manner as indicated below, which service satisfies the requirements of Rule 5, of the Federal Rules of Appellate Procedures.

SERVICE BY FIRST CLASS MAIL
ADDRESSED AS FOLLOWS:
Brendan Mullen
Deputy Attorney General
1600 Arch Street Suite 300
Philadelphia, Pa.
19103

Brian Thompson/JQ0773                Brian Thompson/JQ0773
1200 Mokychic Drive                  P.O. Box 33028
Collegeville, PA 19426               St.Petersburg, FL 33733
(Mail By Court Only)                 (Mail By Defendants)

Date: February 16, 2024

1

# EXHIBIT-A

IN THE COURT OF COMMON PLEAS
MONTRGOMERY COUNTY, PENNSYLVANIA

BRIAN THOMPSON,                          :        CIVIL ACTION

                                         :        No. _23 - 22995_

                 Plaintiff,              :
        -V-                                       Montgomery Co Prothonotary
                                                  OCT 17 '23 PM 1:50
                                         :

MOHAMED SAFA, (Sergeant),                :        JURY TRIAL DEMAND

                 Defendant.              :

                                         :

## C I V I L   A C T I O N   C O M P L A I N T

### I. VERIFICATION STATEMENT

I, Brian Thompson/JQ-0773, Plaintiff *Pro Se'*, have read the foregoing Complaint and hereby verify that the matters alleged herein are true, except to those matters alleged upon information and belief, and, to those matters I believe to be true. I certify under the penalty of perjury that the foregoing is true and correct pursuant to 18 Pa. C.S.A. §4904.

### II. JURISDICITON AND VENUE

1). Jurisdiction is invested in the this Court of Common Pleas, of Montgomery County, Pennsylvania, pursuant to 42 Pa. C.S.A. §931(a), and Venue

1

ef: 4847048 pg 16 of 37 for BRIAN THOMPSON

is established pursuant to 42 Pa. C.S.A. §931(c), and Rule 1006(a)(1), of the Pennsylvania Rules of Civil Procedure. Therefore, the jurisdiction and venue within the Court of Common Pleas, of Montgomery County, Pennsylvania is appropriate for it is where the events given rise to the claims occurred.

## III. PARTIES

2). PLAINTIFF, Brian Thompson/JQ-0773, (Plaintiff Hereafter), is a citizen of Pennsylvania, and has a primary and physical mailing address of 1200 Mokychic Drive, Collegeville, PA 19426. Plaintiff also has a secondary mailing address for mail sent by the Defendants at, Brian Thompson/JQ-0773, P.O. Box 33028, St. Petersburg, FL. 33733.

3). DEFENDANT, Mohamed Safa (Defendant Safa Hereafter), is an employee of the Department of Corrections, who at all times relevant, functioned in the capacity as an Sergeant, and has a main employment address of, 1200 Mokychic Drive, Collegeville, PA 19426.

4). Defendant Safa had at all times relevant, acted under the color of state law.

5). Plaintiff is pursuing a First and Eighth Amendment    Deliberate Indifference claim and tort action against Defendant Safa.

## IV. ALLEGATIONS/FACTS

**I. Retaliation**

6). On March 29, 2023, at approximately 7:10am, Plaintiff received his

2

breakfast tray.

7). Plaintiff avers that upon receiving said food tray, Plaintiff then went to a table to check the tray to inquire whether there were any food items missing as it's a typical occurrence that food items are missing.

8). Plaintiff avers that while Plaintiff was standing at the table in attempt to check the tray's contents, Defendant Safa started yelling and screaming at Plaintiff stating, " take it in your cell."

9). Plaintiff stated to Defendant Safa, "I am filing a grievance for you yelling at me."

10). Plaintiff avers that Defendant Safa responded "Go ahead!"

11). On March 31, 2023, Plantiff pressed his cell call button to come out of his cell for work with the rest of the block workers; However, C/O Watson didn't open Plaintiff's door when it was time to come out to get breakfast trays.

12). Plaintiff avers that he inquired with C/O Watson, "why didn't you open my door with the rest of the am Block workers"?

13). Plantiff informed C/O Watson that this Plaintiff was a block worker; At which time C/O Watson looked at the block workers book (which identifies block workers), and indicated to this Plaintiff,  "your name, picture and hours ain't in the book."

14). On April 3, 2023, Plaintiff filed a grievance numbered at (#1027496), as a result of Defendant Safa removing Plaintiff from the work detail.

15). Plaintiff avered that Defendant Safa retaliated against Plaintiff for the requsting of, and the subsequent filing of a grievance; Plaintiff avered in the body of said grievance that Defendant Safa fired Plaintiff as a block worker for the filing

3

of the above mentioned grievance, and caused Plaintiff's name, number and picture to be removed from the block worker list.

16). Plaintiff also stated in the body of the above mentioned grievance, that during the entire length of his employment, Plaintiff even worked on his days off, and that nobody gave Plaintiff any justification and/or reason why Plaintiff's name, number and picture was removed from the block worker list, if Plaintiff was in fact still a block worker, and not fired for the filing of the above mentioned grievance.

17). On April 19, 2023, Lieutenant McCafferty issued the Initial Review Response to Plaintiff's grievance.

18). *For the purpose of exhibiting Defendant Safa's whitewashing of his malfeasance, Plaintiff avers that Initial Review Respondent Lieutenant McCafferty responded to Plaintiff's allegations by stating Plaintiff was not fired; but rather that there was a rotation of workers due to the amount of workers, and it will allow Plaintiff to have his days off. Lieutenant McCafferty also stated Plaintiff attempted to sit at the table, and that Plaintiff would be utilized in a more **limited** capacity.*

19). *For the purpose of exhibiting Deputy Chief Grievance Officer Ms. Moore's desire to acquiesce in the whitewashing of Defendant Safa's malfeasance, Ms. Moore falsely claimed "you and other block workers are rotated so to allow you your days off", and that "There is no evidence of retaliation". Ms. Moore, also stated, "records reflect workers are rotated".*

20). Plaintiff avers that the above assertions by both *Lieutenant McCafferty and Ms. Moore* are not true.

4

21). Plaintiff avers that the above statements were a pretext for the removal of Plaintiff from his job in his previous position, and that he never attempted to sit at the table, and that this statment is an attempt to whitewash/justify Defendant Safa's firing Plaintiff for filing a grievance against him.

22). Plaintiff avers that he was the only block worker who's name, picture and cell was taken out of the the workers book and/or purportedly rotated.

23). Plaintiff requested that the video surveillance footage be preserved in grievance (#1027496), to demonstrate that the statements made by Lieutent McCafferty and by Ms. Moore, as contrived by Defendant Safa, were factually false.

24). Plaintiff avers that only after Plaintiff filed a grievance on Defendant Safa, did all the above adverse actions and other incidents occur.

## II. Retaliation

25). Subsequent to the avove incident, Plaintiff learned that as a result of Plaintiff filing the above mentioned grievance, Defendant Safa submitted a negitive work report in retaliation for the filing of the above metioned grievance.

26). On April 26, 2023, Plaintiff was seen by his unit counselor, Ms. Roulhac, who checked Plaintiff's file and stated to Plaintiff, "I have your work report dated April 20, 2023, and (Sergeant Safa) gave you a negitive report".

27). Plaintiff avers that he requested from Ms. Roulhac, a copy of the report written by Defendant Safa, and was told that she couldn't give Plaintiff a copy of the report, and that Plaintiff should ask unit manager, Mandee Baldwin.

28). On April 27, 2023, Plaintiff saw unit manager, Mandee Baldwin, and

5

asked whether she could provide Plaintiff with a copy of the (Sergeant Safa's) work report, at which time Unit manager, Mandee Baldwin stated that she would not, and that Plaintiff should speak to Sergeant Safa.

29). Plaintiff avers that the above is circumstantial evidence of the Unit management teams desire to cover-up and whitewash Defendant Safa's malfeasance.

30). On May 1, 2023, Plaintiff filed grievance (#1032183).

31). Plaintiff avers that within said grievance, Plaintiff stated that Defendant Safa gave Plaintiff a negative work report because Plaintiff filed grievances on him and it was done out of retaliation.

32). Plaintiff avers that Defendant Safa knows Plaintiff has his commutation papers in, and that Plaintiff never had a negative work report in over eighteen years, and that the timing of the negitive work report is indicative of retalaition.

33). Plaintiff avers that Defendant Safa never filed a negative work report prior to Plaintiff filing a grievance against him.

34). Plaintiff avers that if Defendant Safa believed Plaintiff's work ethic was poor, why would Plaintiff be allowed to work on his days off for many years. As a notabel, in the facility manager's Initial Review Response to grievance (#1027496), it was stated that, "Your not allowed to work on your days off." However, Plaintiff avers that he had done so for many years without comment by staff.

35). *For the purpose of exhibiting Defendant Safa's whitewashing of his malfeasance, Plaintiff avers that Initial Review Respondent Capt. K. Young responded to Plaintiff's allegations by stating the same lie as as he did in his previous Initial Review Response to grievance (#1029617), "Staff do not retaliate*

6

*against inmates for filing grievances."*

36). *Plaintiff avers that Capt. K. Young, also stated he spoke with unit manager, Mandee Baldwin and unit counselor Ms. Roulhac and that they told Plaintiff to wait for a copy of the negitive work report, because they wanted a meeting with Sergeant Safa to see why he gave Plaintiff a negative work report.*

37). *For the purpose of exhibiting Deputy Chief Grievance Officer Ms. Moore's desire to acquiesce in the whitewashing of Defendant Safa's malfeasance, Ms. Moore claimed unit manager, Mandee Baldwin and unit counselor Ms. Roulhac wanted to speak with Defendant Safa regarding the negitive work report.*

38). On or about the week of August 7th or 14th, Plaintiff spoke to counselor Ms. Tremble, and requested a copy of the Negative Work Report issued by Defendant Safa, and that she denied Plaintiff's request.

## III. Cruel And Unusual Punishments /Personal Endangerment

39). On April 3, 2023, as side yard was coming back onto the unit, Plaintiff's cellmate, Joel Muir (GB-3985), heard Defendant Safa say to inmate Michael Ortiz (#QN-8742), "Those guys in 2027 (Plaintiff's cell), are rats; They filed grievances on me."

40). Plaintiff avers that Defendant Safa said this to inmate Michael Ortiz (#QN-8742), with the intent and purpose of causing Plaintiff and inmate Joel Muir (GB-3985), personal harm.

41). On April 15, 2023, Plaintiff filed a grievance (**#1029617**), for the above stated statements as made by Defendant Safa.

7

42). On May 12, 2023, Capt. K. Young issued the Initial Review Response to Plaintiff's grievance.

43). *For the purpose of exhibiting Defendant Safa's whitewashing of his malfeasance, Plaintiff avers that Capt. Young stated, "inmates are not retaliated against for filing grievances." He also stated, "their is no evidence to substantiate your allegations about the statement you said Sgt. Safa made about you and your cellmate." Plaintiff avers that this response on its face is Ludacris.*

44). *In addtion to the above,* Initial Review Respondant Capt. K. Young never spoke to any of the prisoners Plaintiff mentioned in his grievance who overheard and/or was the recipient of the statements made by Defendant Safa.

45). *For the purpose of exhibiting Deputy Chief Grievance Officer Ms. Moore's desire to acquiesce in Capt. K. Young's whitewashing of Defendant Safa's malfeasance, Ms. Moore acquiesced in the malfeasance by claiming "You do not indicate this [calling Plaintiff a rat] harmed you." Plaintiff avers that such a statement in a prison setting is conducive to assault, thus the injury is obvious.*

46). Plaintiff avers that this was a violation of policy and code of ethic Section-(B)(1), thus it is ipso facto, presumed that an injury had occurred. Moreover, Plaintiff stated on page two of his grievance that Defendant Safa called Plaintiff and his cellmate A rat for filing a grievance against him. This malfeasance not only violated policy, but it endangered Plaintiff's health and safety by subjecting this Plaintiff to assault. This risk of injury was Defendant Safa's intent.

47). Plaintiff avers that Defendant Safa intentionally encouraged and sought to facilitate an assault on Plaintiff by calling Plaintiff a rat to another prisoner.

48). Plaintiff avers that Defendant Safa having many years of experience in

8

corrections, knew and/or should have known that labeling a prisoner a rat could and would likely result in that labeled prisoner being assulted by another prisoner.

## IV. Conclusion

49). Plainitff avers that the above malicious retaliatory conduct by Defendant Safa has placed such a chill on Plaintiff's willingness to exercise his right to free speech, that Plaintiff no longer engages in such _lawful_ conduct in fear of further retaliation by either Defendant Safa and/or other staff members whom Defendant Safa may induce to retaliate against Plaintiff.

50). Plaintiff avers that policy and/or the departments code of ethics imposes a duty of care on all prisoners while Defendant Safa was opearting as a sergeant.

51). Plaintiff avers that outside any policy or code of ethic, a duty of care is imposed on all personnel while acting under the color of state law.

52). Plaintiff complied with all conditions precedent in this case and exhausted all applicable administrative remedies, or they have been waived.

53). Plaintiff alleges that the Grievance System is not constitutionally adequate as it fails to provide impartial review of issues raised, and in the following ways:

i). Department personnel review their own colleagues misconduct -- this constitutes a conflict of interest;

ii). The Department maintains a policy, custom, culture and/or practice of always concurring and/or adopting the colleagues version when it involves staff

9

f: 4847048 pg 24 of 37 for BRIAN THOMPSON

abuse;

iii). The Facility Manager (Superintendent) always concurs with the Initial Review Respondents conclusions and/or findings into their sham investigation when it involves staff abuse;

iv). The Department's Chief Grievance Office of Inmate Appeals is an extention of the Chief Counsel's Office whom are charged with defending the Department, its agents and/or contractors; 71 P.S. §732-402. Powers and duties of counsel;

v). The Department fraudulently dismisses and/or withholds Initial Reviews; Appeal Responses and/or Final Appeal Review Responses so as to stymie a prisoners ability to exhaust administrative remedies so as to prevent a prisoner from bringing suit under the guise it's still under investigation knowing that Department policy or 42 U.S.C. §1997(e)(a), does not provide a default mechanism for Department violations of policy and/or set a deadline for the issuance of Final Appeal Review Responses that are purportedly under investigation, thus authorized to withhold said Final Appeal Review Responses in perpetuity.

54). Plaintiff avers that as a direct result of the above facts, Plaintiff cannot obtain impartial review of his complaints, and that the Chief Grievance Office and/or its subordinates have contrived illegitimate methods to either dismiss and/or deny legitimate grievances knowing a prisoner cannot disprove any contrived assertion made by a defendant, to the contrary of Plaitniff's statements; (e.g.), staff statements contrived in absentia from Plaintiff and/or a failure to include a document with the appeal when in fact the document was enclosed.

10

55). Plaintiff avers that any grievances cited herein, which have been dismissed and/or denied were done so to protect the Defendant despite Plaintiff complying with all Policy requisites.

## V. CAUSES OF ACTIONS

56). Plaintiffs pleads in the alternative, and sets forth the following Cause(s) of Action(s):

### COUNT-(1) DECLARATORY JUDGMENT
### DefendantS: Defendant SAFA

57). Plaintiff incorporates each and every paragraph above, and sets forth the same herein at length.

58). Plaintiff avers that as a direct or proximate result of the acts and/or omissions of the above named Defendant, as stated elsewhere in this complaint, Plaintiff is entitled to Declaratory Judgment and/or any judgment in equity so allowable under any cause of action not stated within these causes of actions, but to which the elements to such a claim have been made out.

59). Plaintiff seeks this Court to find and conclude the following:

a). THAT Plaintiff's civil rights against Cruel and Unusaul Punishments pursuant to the Eighth Amendment, were violated when of Defendant Safa retaliated against Plaintiff by endangering Plaintiff's health and safety by calling Plaintiff a rat to other inmates for the filing of grievances against the Defendant;

b). THAT Plaintiff's civil right to (*Free Speech*) pursuant to the First Amendment, was violated when Defendant Safa retalaitied against Plaintiff by terminating his inmate employment for filing grievances against the Defendant;

11

c). THAT Plaintiff's civil right to (*Free Speech*) pursuant to the First Amendment, was violated when Defendant Safa retalaitied against Plaintiff by issuing a bad work report in regard to his inmate employment for filing grievances against the Defendant.

COUNT-(1) 42 U.S.C. §1983
FIRST AMENDMENT/RETALIATION
ARTICLE-I §20 RIGHT TO PETITION FOR REDRESS
TERMNATION FROM EMPLOYMENT
DEFENDANT: SAFA

60). Plaintiff incorporates each and every paragraph above, and sets forth the same herein at length.

61). Count One-(1) is brought against Defendant Safa pursuant 42 U.S.C. § 1983, First Amendment, for retaliation.

62). At all times relevant, Plaintiff was engaging in a constitutionally protected activity.

63). The above named Defendants acts as stated elsewhere in this compliant, were committed against Plaintiff for the sole purpsose of retaliation.

64). Plaintff avers that the actions of Defendant Safa in Terminating Plaintiff's employment was one in retailaition for Plaintiff's filing of grievances against the Defendant.

65). Plaintiff avers that he has a protected First Amendment Right to free speech, and implicit within that right, is the right to engage in constitutionally protected activity.

66). At all times relevent, and as stated elsewhere in this complaint, Defendant Safa violated Plaintiff's First Amendment Right to Free Speech by

12

intentionally retaliating against Plaintiff for filing grievances.

67). Plaintiff avers that said conduct by Defendant Safa was in direct response to Plaintiff filing grievances.

68). Plaintiff avers that Defendant Safa's retaliatory action did not further a legitimate penological goal.

69). As a direct or proximate result of Defendant Safa's acts, Plaintiff is in great fear of exercising his First Amendment Rights, which includes, but is not limited to: 1) Being placed in fear of loss of prisoner employment; 2) receiving a contrived misconduct, and 3) any other adverse action personally may engage in.

70). Plaintiff avers Defendant Safa's acts of retaliation were sufficient to deter Plaintiff; a person of ordinary firmness, from exercising his constitutional rights.


WHEREFORE, Plaintiff seeks Nominal, Compensatory and Punitive Damages to be determined by a jury, including damages for pain and suffering, mental and emotional anguish, including Court Costs, Pre-verdict and Post-verdict interest, Delay Damages, Attorney Fees were applicable, and Single cell housing.

<u>COUNT-(2)  42 U.S.C. §1983</u>
<u>FIRST AMENDMENT/RETALIATION</u>
<u>ARTICLE-I §20 RIGHT TO PETITION FOR REDRESS</u>
<u>ISSUING A BAD WORK REPOERT</u>
<u>DEFENDANT: SAFA</u>

71). Plaintiff incorporates each and every paragraph above, and sets forth the same herein at length.

72). Count Two-(2) is brought against Defendant Safa pursuant  42 U.S.C. §

13

1983, First Amendment, for retaliation.

73). At all times relevant, Plaintiff was engaging in a constitutionally protected activity.

74). The above named Defendants acts as stated elsewhere in this compliant, were committed against Plaintiff for the sole purpsose of retaliation.

75). Plaintff avers that the actions of Defendant Safa in maliciously issuing a bad work report was one in retailaition for Plaintiff's filing of grievances against the Defendant.

76). Plaintff avers that the actions of Defendant Safa in maliciously issuing Plaintfif a bad work report knowing Plaintiff had a commutation request pending was in retailaition for Plaintiff filing of grievances against the Defendant.

77). Plaintiff avers that he has a protected First Amendment Right to free speech, and implicit within that right, is the right to engage in constitutionally protected activity.

78). At all times relevent, and as stated elsewhere in this complaint, Defendant Safa violated Plaintiff's First Amendment Right to Free Speech by intentionally retaliating against Plaintiff for filing grievances.

79). Plaintiff avers that said conduct by Defendant Safa was in direct response to Plaintiff filing grievances.

80). Plaintiff avers that Defendant Safa's retaliatory action did not further a legitimate penological goal.

81). As a direct or proximate result of Defendant Safa's acts, Plaintiff is in great fear of exercising his First Amendment Rights, which includes, but is not limited to: 1) Being placed in fear of loss of prisoner employment; 2) receiving a

ef: 4847048 pg 29 of 37 for BRIAN THOMPSON

contrived misconduct, and 3) any other adverse action personally may engage in.

82). Plaintiff avers Defendant Safa's acts of retaliation were sufficient to deter Plaintiff; a person of ordinary firmness, from exercising his constitutional rights.

WHEREFORE, Plaintiff seeks Nominal, Compensatory and Punitive Damages to be determined by a jury, including damages for pain and suffering, mental and emotional anguish, including Court Costs, Pre-verdict and Post-verdict interest, Delay Damages, Attorney Fees were applicable, and Single cell housing.

### COUNT-(3) 42 U.S.C. §1983/EIGTH AMENDMENT
### CRUEL AND UNUSUAL PUNISHMENTS
### FACILITATING ASSAULT
### DEFENDANT: SAFA

83). Plaintiff incorporates each and every paragraph above, and sets forth the same herein at length.

84). Count Three-(3) is brought against Defendant Safa pursuant 42 U.S.C. § 1983, Eighth Amendment, for deliberate indifference to the health and safety of Plaintiff.

85). Defendant Safa had personal knowledge of a substantial risk of serious harm to Plaintiff when the Defendant called Plaintiff a rat/snitch to other prisoners, and that such knowledge was deliberately indifferent to Plaintiff's health and Safety, and therefore violated Plaintiff's Eighth Amendment right to be free from Cruel and Unusual punishments.

86). Plaintff avers that the actions of Defendant Safa in calling Plaintiff a

15

rat/snitch in the presence of other inmates was one in retailaition for Plaintiff's filing of grievances against the Defendant, with the intent of causing Plaintiff to be assaulted.

87). The failure of Defendant Safa to act on his knowledge of a substantial risk of serious harm to Plaintiff was deliberately indifferent, and violated the Eighth Amendment right to be free from Cruel and Unusual punishments.

88). Plaintiff avers that that Defendant Safa's conduct violated the rights, privileges and immunity's guaranteed by the Eighth Amendment.

89). The above named Defendant's acts as stated elsewhere in this compliant, were committed against Plaintiff for the sole purpsose of retaliation and to done maliciously and sadistically to cause injury and harm to Plaintiff.

90). Plaintiff avers that Defendant Safa demonstrated deliberate indifference to Plaintiff's life and safety by calling a rat/snitch in the presence of other inmates which is notoriously known to cause prisoners to be assaulted.


WHEREFORE, Plaintiff seeks Nominal, Compensatory and Punitive Damages to be determined by a jury, including damages for pain and suffering, mental and emotional anguish, including Court Costs, Pre-verdict and Post-verdict interest, Delay Damages, Attorney Fees were applicable, and Single cell housing.

<u>COUNT-(4)  STATE LAW TORTS</u>
<u>42 C.S.A. §8522(b)</u>
<u>RETALIATION/FACILITATING ASSAULT</u>
<u>DEFENDANT: SAFA</u>

91). Plaintiff incorporates each and every paragraph above, and sets forth

16

the same herein at length.

92). Count Four-(4) is brought against Defendant Safa pursuant 42 C.S.A. § 8522(b).

93). Plaintiff avers that Defendant Safa was not acting within the scope of this employment/duties when maliciously and sadistically placing Plaintiff at risk of assault.

94). Plaintiff avers that Defendant Safa intented to cause harmful or offensive contact with the plaintiff, and that such contact actually occurred.

95). Plaintiff avers that Defendant Safa intented to place Plaintiff in reasonable and immediate apprehension of harmful or offensive contact, and that said statements that Plaintiff was a rat/snitch did cause such apprehension.

96). Plaintiff avers Defendant Safa's statements were intended to inflict this contact and took the affirmative action to do so.

97). Plaintiff avers Defendant Safa's actions were unreasonable in the use of said statements in relation to his employment duties.

98). As stated elsewhere in this complaint, the actions of Defendant Safa was done without any privilege or right to place Plaintiff in danger of assault as said conduct violated state law, and were committed contrary to Department Code of Ethics and policy.

99). As stated elsewhere in this complaint, the actions Defendant Safa was committed without need or provocation, as Plaintiff in no was obstrepuous obstreperous, and said statements were not made in good-faith in an effort to maintain or restore discipline, but rather inflicted maliciously and sadistically to cause injury and harm to Plaintiff.

af: 4847048 pg 32 of 37 for BRIAN THOMPSON

100). The above acts as stated elsewhere in this compliant, were committed against Plaintiff for the sole purpsose of retaliation and to inflict unnecessary pain, discomfortant and injury, and that the Defendant's statements were not applied in good-faith in an effort to maintain or restore discipline, but rather inflicted maliciously and sadistically to cause injury and harm to Plaintiff.

101). Plaintiff avers that at all times relevant to the above mentioned conduct, Defendant Safa was not acting in his official capacity or under the color of state law, as above mentioend conduct was not within his job description, or sanctioned by policy or Department code of ethics, thus the Defendant does not enjoy immunity from suit.

102). At all times relevant, Plaintiff was engaging in a constitutionally protected activity.

103). The above named Defendants acts as stated elsewhere in this compliant, were committed against Plaintiff for the sole purpsose of retaliation.

104). Plaintff avers that the actions of Defendant Safa in Terminating Plaintiff's employment was one in retailaition for Plaintiff's filing of grievances against the Defendant.

105). Plaintff avers that the actions of Defendant Safa in maliciously issuing Plaintfif a bad work report knowing Plaintiff had a commutation request pending was in retailaition for Plaintiff filing of grievances against the Defendant.

106). Defendant Safa had personal knowledge of a substantial risk of serious harm to Plaintiff when the Defendant called Plaintiff a rat/snitch to other prisoners, and that such conduct constituted assault and battery.

107). Plaintiff avers that he has a protected First Amendment Right to free

18

speech, and implicit within that right, is the right to engage in constitutionally protected activity.

108). At all times relevent, and as stated elsewhere in this complaint, Defendant Safa violated Plaintiff's First Amendment Right to Free Speech by intentionally retaliating against Plaintiff for filing grievances.

109). Plaintiff avers that said conduct by Defendant Safa was in direct response to Plaintiff filing grievances.

110). Plaintiff avers that Defendant Safa's retaliatory action did not further a legitimate penological goal.

111). As a direct or proximate result of Defendant Safa's acts, Plaintiff is in great fear of exercising his First Amendment Rights, which includes, but is not limited to: 1) Being placed in fear of loss of prisoner employment; 2) receiving a contrived misconduct, and 3) any other adverse action personally may engage in.

112). Plaintiff avers Defendant Safa's acts of retaliation were sufficient to deter Plaintiff; a person of ordinary firmness, from exercising his constitutional rights.

WHEREFORE, Plaintiff seeks Nominal, Compensatory and Punitive Damages to be determined by a jury, including damages for pain and suffering, mental and emotional anguish, including Court Costs, Pre-verdict and Post-verdict interest, Delay Damages, Attorney Fees were applicable, and Single cell housing.

## VI. JURY TRIAL DEMAND

113). Plaintiff demands a jury trial on all issues and counts so triable.

19

Respectfully Submitted

Brian Thompson/JQ-0773

Date: October 12, 2023

20

IN THE COURT OF COMMON PLEAS
MONTRGOMERY COUNTY, PENNSYLVANIA

BRIAN THOMPSON,                         :        CIVIL ACTION

                                        :        No. 23 - 22995

            Plaintiff,                  :

      -V-

                                        :        JURY TRIAL DEMAND

MOHAMED SAFA, (Sergeant);               :

            Defendant.                  :

                                        :

## CERTIFICATION STATEMENT

    I, Brian Thompson, Plaintiff *Pro Se'*, have read the foregoing documents and hereby verify that the matters alleged herein are true, except to those matters alleged upon information and belief, and, to those matters I believe to be true. I certify under the penalty of perjury that the foregoing is true and correct pursuant to 18 Pa. C.S.A. §4904.


Brian Thompson/JQ-0773                    Brian Thompson/JQ-0773
1200 Mokychic Drive                       P.O. Box 33028
Collegeville, PA 19426                     St. Petersburg, FL. 33733
(Mail By Court)                           (Mail By Defendants)


Date: October 12, 2023

IN THE COURT OF COMMON PLEAS
MONTRGOMERY COUNTY, PENNSYLVANIA

BRIAN THOMPSON,                          :        CIVIL ACTION

                                         :        No. _23- 22995_

                    Plaintiff,           :

          -V-

                                         :        JURY TRIAL DEMAND

MOHAMED SAFA, (Sergeant);                :

               Defendant.                :

                                         :

### CERTIFICATE OF COMPLIANCE

   I, Brian Thompson, Plaintiff *Pro Se'*, do hereby certify that this filing complies with the
Unified Judicial System of Pennsylvania and South Carolina; Case records of the trial Courts that
require filing confidential information and documents differently than non-confidential
information and documents.

_Brian Thompson_                          _Brian Thompson_
Brian Thompson/JQ-0773                    Brian Thompson/JQ-0773
1200 Mokychic Drive                       P.O. Box 33028
Collegeville, PA 19426                    St. Petersburg, FL. 33733
(Mail By Court)                           (Mail By Defendants)


Date: October 12, 2023

# EXHIBIT-B

## AFFIDAVIT

I, Michael Ortiz, being duly sworn, deposes and states the following:

1).    The affiant avers that his legal name is Michael Ortiz, and is currently incarcerated at SCI-Phoenix.

2).    On April 12, 2023 at approximately 10:45 am, while on FB Housing Unit, I was talking with Sgt. Safa, when I noticed Lt. McCafferty standing at the cell door of cell 2027. I asked Sgt Safa, "what's going on up there"? motioning to cell 2027 and Sgt. Safa answered and replied, "them two rats in 2-27 keep filing fucking grievances on me".

Respectfully submitted,

_Michael Ortiz_ 5-2-23
Michael Ortiz  QN-8742
1200 Mokychic Drive
Collegeville, PA. 19426

## VERIFICATION

I, Michael Ortiz, have read the foregoing documents and hereby verify that the matters alleged herein are true, except to those matters alleged upon information and belief, and, to those matters I beleive to be true. I certify under the penalty of perjury that the foregoing is true and correct to 18 Pa. C.S.A. § 4904; 28 U.S.C. § 1746.

Respectfully submitted,

_Michael Ortiz_ 5-2-23
Michael Ortiz  QN-8742
1200 Mokychic Drive
Collegeville, PA. 19426

# EXHIBIT-C

## AFFIDAVIT OF MALIK CARTER KR-7998

I, Malik Carter, duly swear that the following is true and correct to the best of my knowledge. At numerous times beginning in April 2023 through June 2023. I've heard Sgt. Safa call the two inmates in cell 2027, Brian Thompson and Joel Muir "rats" in the presence of myself as well as other inmates. I've been on the B-Side of F-Block for over 15 months and I have never heard any inmate call or refer to Brian Thompson or Joel Muir as a rat until Sgt. Safa started persistently calling them "rats" in the presence of myself and other inmates. I was even a cell mate of Brian Thompson for a short time and I never heard or witnessed anyone call or refer to him as a rat, but now it is prevalent, I hear inmates on both sides of F-Block the A & B side calling and/or referring to Brian Thompson and Joel Muir as "rats". I now also witness Brian Thompson and Joel Muir being ostracized by the other inmates in general population because of this label that has been placed on them by Sgt. Safa.

Date: June, 09, 2023

Respectfully Submitted,

Malik Carter

Malik Carter KR-7998
1200 Mokychcic Drive
Collgeville, PA
19426

## VERIFICATION

I, Malik Carter, hereby swear under penalty of perjury pursuant to 28 U.S.C. § 1746; 18 Pa.C.S.A. § 4904 that information herein is true and correct to the best of my knowledge.

Date: June 9, 2023

Respectfully Submitted.

Malik Carter KR-7998
1200 Mokychcic Drive
Collegeville, PA
19426

# EXHIBIT-D

**AFFIDAVIT**

I, Caleb Butler FR-8880, duly swear that the following is true and coorect to the best of my knowledge.

On or about October 3, 2023, while in the Westside library, I was talking to Brian Thompson JQ-0773 and Joel Muir GB-3985.

After the library session had ended I was heading back to J-Unit, which is my housing unit, when an inmate that I only know as Smoke approached me and stated "You know them two dudes you was just talking to are rats?" I responded to him and said "I've known them guys for years." at which time Smoke replied "I heard them two pussies is on F-Block telling on everything. Watch yourself around them."

Date: October 30, 2023

Respectfully Submitted.

Caleb Butler FR-8880
1200 Mokychic Drive
Collegeville, PA
19426

**<u>VERIFICATION</u>**

I, Caleb Butler, hereby swear under the penalty of perjury purusant to 28 U.S.C. § 1746;  18 Pa.C.S.A. § 4904 that the information herein is true and correct to the best of my knowledge.

Date: October 30, 2023

Respectfully Submitted.

Caleb Butler FR-8880
1200 Mokychic Drive
Collegeville, PA
19426

1



FIRST-CLASS MAIL
IMI
$003.31
02/28/2024 ZIP 19426
043W31248366



SCI- PHOENIX
Name Brian Thompson
Number JQ-0773
PO Box 244
Collegeville, PA 19426

RECEIVED
MAR - 1 2024

To: United States District Court
Eastern District of Pennsylvania
601 Market Street, Room 2609
Philadelphia, PA 19106-1797

