Brian Thompson, JQ-0773
SCI-Phoenix
P.O. Box 244
Collegeville, PA 19426


November 20, 2024


Re: 23-4742

To: Clerk of courts,

Hello, To whom it may concern, my name is
Brian Thompson. Can you please file my "Amended petition"
ASAP. my court dead Line is on November 22, 2024. I got
proof from The institution, my petition was mailed Today.


Thank you, for your time, Attention and assistance in
this very important matter.


Respectfully submitted
by
Mr. Brian Thompson
JQ-0773

B.T./File
11-20-24


CC: my File

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIAN THOMPSON                              :
    *Plaintiff,*

                           :

    -v-                    :     CIVIL ACTION No.: <u>23-CV-04742-PD</u>

MOHAMED SAFA (Sergeant)   :     ***<u>JURY TRIAL DEMAND</u>***
    *Defendant.*

                           :

                           :

## <u>A M E N D E D   C O M P L A I N T</u>

Plaintiff, <u>Brian Thompson</u>, by and for his complaint against the Defendant, alleges upon information and belief, except as to facts and matter that related to Plaintiff, which are alleged herein upon knowledge, as follows:

### <u>I. VERIFICATION STATEMENT</u>

I, <u>Brian Thompson</u>, Plaintiff *Pro Se'*, have read the foregoing Amendend Complaint and hereby verify that the matters alleged herein are true, except to those matters alleged upon information and belief, and to those matters I believe to be true. I certify under the penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

### <u>II. INCLUSION STATEMENT</u>

1. Plaintiff hereby files this Amended Complaint, and incorporates herein all previously docketed complaints, exhibits, affidavits, depositions, pleadings, answers to interrogatories, and admissions as if set more fully in length below.

### <u>III. JURISDICITON AND VENUE</u>

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 in that this is a civil

action arising under the Constitution of the United States.

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1343 in that this action seeks to redress the deprivation, under color of state law, of rights secured by Acts of Congress providing for equal rights of persons within the jurisdiction of the United States.

4. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. §§2283 and 2284, and Fed. R. Civ. P. 65.

5. The United States District Court of Pennsylvania is an appropriate venue under 28 U.S.C. §1391(b)(2) because it is where a substantial part of the events and omissions giving rise of this claim occurred.

6. The Court has supplemental jurisdiction over the Plaintiff's state law tort claims under 28 U.S.C. §1369.

7. All the discriminatory practices alleged herein were committed within the Commonwealth of Pennsylvania.

## IV. PARTIES

8. Plaintiff, Brian Thompson/JQ-0773, (hereinafter "Plaintiff"), is a citizen of Pennsylvania, resides in the County of Montgomery, has a primary mailing address (for court) of: 1200 Mokychic Dr., Collegeville, PA 19426 and a secondary mailing address (for defendants) of: Brian Thompson/JQ-0773, SCI-PHX, P.O. Box 33028, St. Petersburg, FL 33733.

9. Defendant, Mohamed Safa (hereinafter "defendant Safa"), is an employee of the Pennsylvania Department of Corrections (PADOC), with an employment address of: 1200 Mokychic Dr., Collegeville, PA 19426.

10. Defendant Safa, at all times mentioned herein and relative hereto, was in a fiduciary relationship with Plaintiff, for a period of time, including the time of the occurrences as described hereinafter.

11. Defendant Safa is and was constitutionally and statutorily responsible for the maintenance, conditions, operation, practices, customs, patterns, usages, and totality of conditions of the PADOC housing unit where Plaintiff resides.

2

29. On April 3, 2023, Plaintiff filed a grievance (#1027496), as a result of defendant Safa removing him from work detail. (See Exhibit "A" attached herein).

30. Plaintiff avers defendant Safa retaliated against Plaintiff for the requesting of, and the subsequent filing of said grievance.

31. Plaintiff avers in the body of said grievance that defendant Safa fired Plaintiff as a Block Worker for the filing of said grievance, which caused Plaintiff's name, numer, picture, and hours to be removed from the Block Worker list.

32. Plaintiff avers, during the length of his employment as a Block Worker, consistently worked on his days off and nobody gave Plaintiff any justification, due process, and/or reason why Plaintiff's name, number, picture, and work hours were removed from the Block Worker list. If Plaintiff was in fact still employed as a Block Worker, and not fired for the filing of said grievance, he was not entitled to work with the other Block Workers, after the filing of said grievance.

33. On April 19, 2023, Lieutenant McCafferty issued an Initial Reply to Grievance # 1027496.

34. For the purpose of exhibiting defendant Safa's whitewashing of his malfeasance, Plaintiff avers that Initial Review Respondent Lieutenant McCafferty responded to Plaintiff's allegations by stating Plaintiff was not fired, but rather there was a rotation of workers due to the amount of workers, and it will allow Plaintiff to have his days off. Lieutenant McCafferty also stated Plaintiff attempted to sit at the table, and that Plaintiff would be utilized in a more "limited capacity." (See Exhibit "B" attached herein).

35. For the purpose of exhibiting Deputy Chief Grievance Officer Ms. Moore's desire to acquiesce in the whitewashing of defendant Safa's malfeasance, Ms. Moore falsely claimed "you and other block workers are rotated so to allow you your days off," and that "there is no evidence of retaliation." Ms. Moore, also stated, "records reflect workers are rotated."

36. Plaintiff avers that the above assertions by both Lieutenant McCafferty and Deputy Chief Grievance Officer Ms. Moore are not true, but designed to dispose of Plaintiff's grievance without redress.

37. Plaintiff avers that the above statements were a pretext for the removal of Plaintiff from his job in his previous position, and that he never attempted to sit at the table, and that this statement is an attempt to whitewash/justify defendant Safa's firing Plaintiff for filing a grievance against him. Plaintiff avers the security cameras on the housing unit do not show Plaintiff sitting at a table.

38. Plaintiff avers that he was the only Block Worker who's name, picture, number, hours, and cell number was taken out of the workers log book and/or purportedly rotated.

39. Plaintiff requested that the video surveillance footage be preserved in Grievance # 1027496 to demonstrate that the statement made by Lieutenant McCafferty and by Deputy Chief Grievance Officer Ms. Moore, as contrived by defendant Safa, were actually false.

40. Plaintiff avers that only after Plaintiff filed a grievance on defendant Safa, did all the above adverse actions take place and other incidents occurred.

**B. Retaliation.**

41. Susequent to the above incident, Plaintiff learned that as a result of Plaintiff filing the above-mentioned grievance, defendant Safa submitted a negative work report - in furtherance of his scheme to retaliate against Plaintiff - for the filing of the above-mentioned grievance.

42. On April 26, 2023, Plaintiff was seen by Unit Counselor Ms. Roulhac, who checked Plaintiff's work file and informed Plaintiff, "I have your work report dated April 20, 2023, and Sergeant Safa gave you a negative work report."

43. Plaintiff avers that he requested a copy of said negative work report from Unit Counselor Ms. Roulhac and was told that she could not give Plaintiff a copy of said negative work report, and that Plaintiff should ask Unit Manager Ms. Baldwin.

44. On April 27, 2023, Plaintiff spoke with Unit Manager Ms. Baldwin and requested a copy of the negative work report by Sergeant Safa dated April 20, 2023. Unit Manager Ms. Baldwin stated she would not provide Plaintiff with a copy of said negative work report and

that Plaintiff would need to speak directly to Sergeant Safa.

45. Plaintiff avers that the above statements made by Unit Counselor Ms. Roulhac and Unit Manager Ms. Baldwin - as the direct supervisors of defendant Safa - are circumstantial evidence of the Unit Management team's desire to cover-up and whitewash defendant Safa's malfeasance.

46. On May 1, 2023, Plaintiff filed Grievance #1032183.  (See Exhibit "C" attached herein).

47. Plaintiff avers that within said grievance, Plaintiff stated  defendant Safa gave him a negative work report because Plaintiff filed grievances on him and it was done out of retaliation.

48. Plaintiff avers that defendant Safa knows Plaintiff has commutation papers in, and that Plaintiff had never received a negative work report in over eighteen years, and that the timing of the negative work report is indicative of retaliation.

49. Plaintiff avers that defendant Safa never filed a negative work report prior to Plaintiff filing a grievance against him.

50. Plaintiff avers that if defendant Safa believed Plaintiff's work ethic was sub-par, Plaintiff would not have been allowed to work on his days off for more than eighteen years. Also worth noting, in the Facility Manager's Response to Grievance #1027496, it was stated that, "Your not allowed to work on your days off." However, Plaintiff avers that he had done so for many years without comment by defendant Safa or other staff members, due to the shortage of workers on the block.

51. For the purpose of displaying defendant Safa's whitewashing of his own malfeasance, Plaintiff avers that Initial Review Respondent Captain K. Young responded to Plaintiff's allegations by stating the same lie as he did in his previous Initial Review Response to Grievance #1029617, "Staff do not retaliate against inmates for filing grievances." (See Exhibit "D" attached herein).

52. Plaintiff avers that Captain K. Young, also stated he spoke with Unit Counselor Ms. Roulhac and Unit Manager Ms. Baldwin and that they told Plaintiff to wait for a copy of the

7

negative work report, because they wanted to hold a meeting with Sergeant Safa to see why he gave Plaintiff a negative work report.

53. For the purpose of exhibiting Deputy Chief Grievance Officer Ms. Moore's desire to acquiesce in the whitewashing of defendant Safa's malfeasance, Ms. Moore claimed Unit Manager Ms. Baldwin and Unit Counselor Ms. Roulhac wanted to speak with defendant Safa regarding the negative work report he filed.

54. On or about the week of August 7th or 14th, Plaintiff spoke to Unit Counselor Ms. Tremble, and requested a copy of the negative work report issued by defendant Safa dated April 20, 2023 and  Unit Counselor Ms. Tremble denied said request.

### C. Cruel and Unusual Punishments; Failure to Protect; Zone of Danger.

55. On April 3, 2023, as side-yard was coming back onto the housing unit, Plaintiff's cellmate, Joel Muir/#GB3985, heard defendant Safa say to inmate Michael Ortiz/#QN8741: "Those guys in #2027 (Plaintiff's cell), are rats; they filed grievances on me."

56. Plaintiff avers that defendant Safa said this to inmate Michael Ortiz/#QN8741, with the intent and purpose of causing Plaintiff and his cellmate Joel Muir/#GB3985, physical harm. (See Exhibit "E" attached herein).

57. Plaintiff avers defendant Safa was not acting within the scope of his employment duties when he relayed false and defamatory information to other inmates about Plaintiff. Defendant Safa is not eligible for any immunity as the false statements were made outside of the context of his job description and duties, and were in violation of the PADOC's own rules, policies, and ethical standards.

58. On April 15, 2023, Plaintiff filed Grievance #1029617, for the above-referenced statements as made by defendant Safa to Michael Ortiz/#QN8741 and placing Plaintiff's persons in a zone of danger created by defendant Safa's statements. (See Exhibit "F" attached herein).

59. On May 12, 2023, Captain K. Young issued the Initial Review Response to Plaintiff's

8

Grievance.

60. For the purpose of exhibiting defendant Safa's whitewashing of his malfeasance, Plaintiff avers Captain Young stated: "inmates are not retaliated against for filing grievances." Captain Young also stated "there is no evidence to substantiate your allegations about the statements you said SGT. Safa made about you or your cellmate." Plaintiff avers that this response on it's face is ludacris and the averments given by inmate Michael Ortiz/#QN8741 directly contradicts Captain Young.

61. Plaintiff believes, and therefore avers, that Captain Young provided no investigation as stated in the Initial Review of Grievance #1029617, only provided boilerplate language in response to Plaintiff, as is Standard Operating Procedure at SCI-Phoenix.

62. In addition to the above, Initial Review Respondent Captain Young never spoke to any of the prisoners Plaintiff mentioned in Grievance #1029617 who overheard and/or were the recipients of the statements made by defendant Safa.

63. For the purpose of exhibiting Deputy Chief Grievance Officer Ms. Moore's desire to acquiesce in Captain Young's whitewashing of defendant Safa's malfeasance, Ms. Moore directly acquiesced in the malfeasance by claiming: "you do not indicate this [calling Plaintiff a rat] harmed you."

64. Plaintiff avers that such a statement in a prison setting is conductive to assault and violence, the threat of injury is obvious and known to Ms. Moore who has worked in a prison setting for many years.

65. Plaintiff avers that this was a violation of PADOC policy and Code of Ethics §(B)(1), thus it is *ipso facto* presumed that an injury had occurred.

66. Moreover, Plaintiff stated on page two of Grievance #1029617 that defendant Safa called him and his cellmate Joel Muir/#GB3985 a rat for filing a grievance and this malfeasance not only violated PADOC's own policy, but also endangered Plaintiff's care, custody, control, security, well-being, health, and safety by knowingly subjecting Plaintiff to foreseeable physical bodily injury by way of assault to his persons.

67. Plaintiff believes, and therefore avers, defendant Safa's intent was to have Plaintiff

placed in a state-created zone of danger and facilitate an assault on Plaintif by other inmates.

68. Plaintiff believes, and therefore avers, defendant Safa intentionally encouraged and sought to facilitate an assault on Plaintiff by tagging Plaintiff as a rat to another inmate.

69. Plaintiff believes, and therefore avers, that defendant Safa - having many years of experience in corrections - knew and/or should have known that tagging Plaintiff a prisoner as a rat could have and would have resulted in that prisoner being assaulted by other prisoners.

70. Plaintiff believes, and therefore avers, defendant Safa's conduct did not occur in his official capacity and that defendant Safa's independent acts of misconduct clearly rise to the level of various torts and crimes of *inter alia*, facilitating assault, breach of fidicuary duty, and negligence.

71. Plaintiff believes, and therefore avers, defendant Safa's acts as an employee of the Commonwealth of Pennsylvania and the Pennsylvania Department of Corrections, caused the injury to the Plaintiff and that such acts constituted crimes, actual fraud, actual malice and/or willful misconduct, in violation of the provisions of 42 Pa. C.S. § 8550.

### D. Creating unsafe and dangerous artificial conditions on Commonwealth Property.

72. As a result of the inadequate, unsafe and dangerous conditions created and maintained by defendant Safa on the housing unit, Plaintiff was placed in an artificially unsafe condition on the real estate of the Commonwealth of Pennsylvania.

73. These dangerous and unsafe conditions described herein have created a foreseeable dangerous condition for Plaintiff - a discrete individual - and was foreseeable that Plaintiff would be physically harmed by defendant's conduct. The defendant knew of these dangerous, unsafe conditions due to Plaintiff's grievances, but chose to do nothing to address the problem.

74. In addition to being notified of several incidents of violence, representatives of the defendant met with the Plaintiff and advised that no such condition existed.

75. As a result of the defendant's failures, the Plaintiff formally placed the defendant on

10

notice of their foreseeable damages.

76. Defendant Safa generally has protection of sovereign immunity set forth in the Political Subdivision Torts Claim Act. *42 Pa.C.S.A. §8541.*

77. As set forth in the exceptions enumerated in *42 Pa.C.S.A. §8542*, defendant Safa may be sued and is liable for:

> *(3)* Real property. — The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency.

*42 Pa.C.S.A. §8542(b)(3).*

78. Defendant Safa generally has protection of sovereign immunity set forth in *42 Pa.C.S.A. §8521.*

79. As set forth in the exceptions enumerated in *42 Pa.C.S.A. §8522*, defendant Safa may be sued and is liable for:

> *(4)* Commonwealth real estate, highways and sidewalks. — A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

*42 Pa.C.S.A. §8522(b)(4)*; *Cf. 42 Pa.C.S.A. §§ 8542(a)(2), 8550* (an employee of a local agency enjoys no official immunity from liability for injuries arising from wilful misconduct).

80. These exceptions are applicable to the facts in this case because the series of events herein stem from the care, custody and control of Plaintiff's persons.

81. Furthermore, these exceptions are applicable to the facts in this case because a

dangerous condition existed as a result of defendant's behavior in the creation of an artifically dangerous condition on the real estate of the SCI-PHX facility. Such dangerous conditions were likely to cause issues to other individuals, and in fact did cause issues for numerous individuals, on multiple occassions. Moreover, the defendant was specifically made aware of the problem, was responsible for the housing unit, and nothing has been done to date to rectify the issue.

82. The defendant has engaged in a course of conduct which has caused and/or permitted severe, extensive and permanent damage to the Plaintiff's persons in that the defendant has, for a substantial period of time, knowingly maintained and operated the public property in such a state of disrepair as to cause and permit permanent damage to the Plaintiff and other individuals using their public property, all of which has continued to the present time and which has deprived Plaintiff of the lawful use and enjoyment of their property.

83. All of the matters hereinabove set forth occurred because of the negligence, carelessness, and recklessness, and unlawful and improper actions of the defendant Safa in knowingly failing and refusing to design proper safety precautions so as to properly allow public access to the facilities, in knowingly refusing to maintain and repair and refusing to adhere to their responsibilities under the laws of the Commonwealth of Pennsylvania, in properly staffing the housing unit and knowingly failing and refusing to prevent serious risk of bodily harm to Plaintiff, in knowingly failing and refusing to prevent the conditions and matters hereinabove set forth, and in knowingly failing and refusing to provide an adequate remedy.

84. It is believed and, therefore, averred that defendant Safa was further careless, reckless, and negligent in operating the scheduling of staff without adequate training, ethical standards, and psychological evaluations, which caused the harm to Plaintiff.

85. As a result of the negligence, carelessness, recklessness, and improper and unlawful conduct of the defendants, the Plaintiff has sustained severe and permanent damage in the following particulars:

(a) Plaintiff has been adversely affected by the severe and nauseous conduct of the defendant that were disturbing, oppressive, intolerable, and unhealthy;

(b) The peaceful, quiet and healthful enjoyment of Plaintiff has been interfered with

and destroyed; and

(c) Plaintiff has been or will be compelled and required to spend large sums of money to attempt to alleviate the problems caused by the defendant;

86. The defendant has failed and/or refused to properly maintain security on the housing unit as to prevent further violent flair-ups, despite prior notice and knowledge of the same.

87. Plaintiff has demanded that the defendant properly maintain the housing and prevent further potential acts of violence by, at a minimum, provide appropriate training to staff for the care, custody, control, safety, security, and well-being of inmates; however, the defendant has refused or failed to make such changes.

88. The matters hereinabove set forth causing severe and irreparable damage and harm to the Plaintiff, including the increased potential for future harm, constitutes a nuisance of an intolerable nature.

89. As a direct result of the matters herein set forth, Plaintiff's care, custody, control, security, and well-being have been compromised and, further, in the event that repairs and replacements and corrections are made to the housing unit in an attempt to place Plaintiff in the position he was prior to the incidents described herein brought about by the negligent, careless, and reckless conduct, and improper and unlawful actions of the defendant, Plaintiff has sustained in the meantime suffered a real loss.

90. The defendant has failed and/or refused to discharge his responsibilities under law and in a manner consistent with the rights of the Plaintiff.

91. Plaintiff has in no manner contributed to the causes of the said matters herein complained of, and are not permitted by law to resolve the issue and place a properly trained guard within the housing unit and/or otherwise prevent the problems and damages described herein.

92. All of the matters complained of have been, and continue to be caused by the negligent, careless, reckless, improper and unlawful actions of the defendant Safa, as set forth.

93. Defendant Safa, who was in the immediate care and control of Plaintiff for the

PADOC and acting as its agent, ostensible agent, servant, employee, and/or independent contractor, who in turn was acting within the scope of his employment and on behalf of the PADOC, authorized Plaintiff to reside on the housing unit of the public entity.

94. Defendant Safa's superiors named herein were and have been on notice of the potential and actual damages caused by defendant Safa in the past, and have recklessly disregarded the same.

95. Despite Safa's superiors having prior knowledge of the situation, they recklessly, intentionally and/or negligently have not taken or implemented any measures to resolve the hostile housing unit environment created specifically by defendant Safa with the intent of causing injury to the Plaintiff.

96. Plaintiff, acting in good faith, and assuming all of defendant Safa's representations were made in good faith, agreed to be housed on the housing unit where defendant Safa was in charge of the care, custody, control, security, and well-being of inmates.

## VI. CONCLUSION

97. Plaintiff was granted all rights and privileges and tenure as provided to other Block Workers at SCI-Phoenix.

98. Defendant Safa was acting in her official capacity as Correctional Officer II of PADOC and, as such, the aforementioned representations and actions of defendant Safa were the official acts of the PADOC itself.

99. Defendant Safa knew or should have known that his actions in retaliating against Plaintiff's denied Plaintiff's constitutional rights to due process of law and therefore rendered defendant Safa personally liable under 42 U.S.C. §1983.

100. The false filing of a negative work report against Plaintiff is violative of Plaintiff's right to notice and hearing before any substantial deprivation of property and/or liberty by the state of any party.

101. That the decision by defendant Safa was rendered even though Plaintiff did not have the opportunity to cross-examine all the witnesses, and did not have the opportunity to

present any witness, or evidence, or testify on his own behalf.

102. Defendants Safa violted Plaintiff's rights as guaranteed by the 14th Amendment and 42 U.S.C. §1983, in that defendant Safa had terminated Plaintiff, and by such action had arbitrarily, discriminatorily, capriciously, and illegally deprived Plaintiff of his tenured right under implied contract to continued employment without affording to Plaintiff his right to due process.

103. By his actions and/or omissions as described herein and throughout this Complaint, defendant Safa has intentionally acted in a manner which he knew or should have known during his long-seated tenure with PADOC, would cause great emotional suffering to Plaintiff, thus committing the tort of intentional infliction of emotional distress by extreme and outrageous conduct, to Plaintiff's great detriment and loss.

104. When Plaintiff asked the basis for his removal from the work program, defendant Safa refused to provide any.

105. Despite repeated efforts, defendant Safa has not provided Plaintiff with any comparable or suitable employment.

106. Despite Defendant Safa's representations that Plaintiff would continue to receive Block Worker liberties on the housing unit, during the next several months, there were other inmates who received said liberties on the unit, but not to Plaintiff.

107. Plaintiff avers that the above malicious retaliatory conduct by defendant has placed such a chill on Plaintiff's willingness to exercise his right to free speech, that Plaintiff no longer engages in such lawful conduct in fear of further retaliation by either defendant Safa and/or other staff members or inmates whom defendant Safa may induce to retaliate against Plaintiff.

108. Plaintiff avers that policy and/or the department's Code of Ethics imposes a duty of care on all prisoners while defendant Safa was operating as a Sergeant.

109. Plaintiff avers that outside any policy or Code of Ethics, a duty of care is imposed on all PADOC personnel while acting under the color of state law.

110. Plaintiff complied with all conditions precedent in this case and exhausted all

applicable and available administrative remedies, or they have been waived.

111. Plaintiff alleges that the grievance system is not constitutionlly adequate as it fails to provide impartial review of issues raised, and in the following ways:

i.  PADOC personnel review their own colleagues misconduct - this constitutes a conflict of interest;

ii.  The PADOC maintains a policy, custom, culture, and/or practice of always concurring and/or adopting the colleague's version when it involves staff abuse;

iii.  The Facility Manager (Superintendent) always concurs with the Initial Review Respondent's conclusions and/or findings into their sham investigation when the grievance involves staff;

iv.  The PADOC's Chief Grievance Office of Inmate Appeals is an extension of the PADOC Chief Counsel's Office whom are charged with defending the PADOC, its agents and/or contractors; 71 P.S. §732-402.

v.  The PADOC fraudulently dismisses and/or withholds Initial Reviews, Appeal Responses, and/or Final Appeal Review Responses so as to stymie a prisoner's ability to exhaust administrative remedies and to prevent a prisoner from brining suit under the guise it's still under investigation - knowing that PADOC policy or 42 U.S.C. §1997(e)(a) - does not provide a default mechanism for PADOC violations of policy and/or set a deadline for the issuance of Final Appeal Review Responses that are purportedly under investigation, thus authorized to withhold said Final Appeal Review Responses in perpetuity.

112. Plaintiff avers  that as a direct result of the above facts, Plaintiff cannot obtain impartial review of his complaints, and that the Chief Grievance Office and/or their subordinates have contrived illegitimate methods to either dismiss and/or deny legitimate grievances knowing a prisoner cannot disprove any contrived assertion made by a defendant, to the contrary of Plaintiff's statements; (e.g. staff statements contrived in absentia from Plaintiff and/or a failure to include a document with the appeal when in fact the document was

included.

113. Plaintiff avers that any grievances cited herein, which have been dismissed and/or denied were done so to protect the defendant - despite Plaintiff complying with all applicable policy requisites.

<u>VII. CAUSES OF ACTIONS</u>

114. Plaintiff pleads in the alternative, and sets forth the following Cause(s) of Action(s):

<u>**COUNT I - DECLARATORY JUDGEMENT**</u>

<u>**42 U.S.C. §1983**</u>

115. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

116. Plaintiff avers that as a direct or proximate result of the acts and/or omissions of the above named defendant, as stated elsewhere in this Complaint, Plaintiff is entitled to Declaratory Judgment and/or any judgment in equity so allowable under any cause of action not stated within these causes of actions, but to which the elements to such a claim has been made out.

117. WHEREFORE, Plaintiff respectfully requests this Honorable Court to declare:

a.  THAT Plaintiff's civil rights against Cruel and Unusual Punishments pursuant to the Eighth Amendment, were violated when defendant Safa retaliated against Plaintiff by endangering Plaintiff's health and safety by labeling Plaintiff a "rat" to other inmates on the housin unit due to Plaintiff's filing of grievances against defendant;

b.  THAT Plaintiff's civil right to (*Free Speech*) pursuant to the First Amendment, was violated when defendant Safa retaliated against Plaintiff by terminating his inmate employment for filing grievances against the defendant;

c.  THAT Plaintiff's civil right to (*Free Speech*) pursuant to the First Amendment, was violated when defendant Safa retaliated against Plaintiff by issuing a negative work report for filing grievances against the defendant;

d.  THAT Plaintiff's civil right to (*Due Process of Law*) pursuant to the Fourteenth

Amendment, was violated when defendant Safa retaliated against Plaintiff by terminating his inmate employment for filing grievances against the defendant;

e.  THAT Plaintiff's civil right to (*Due Process of Law*) pursuant to the Fourteenth Amendment, was violated when defendant Safa retaliated against Plaintiff by issuing a negative work report for filing grievances against the defendant;

f.  THAT Plaintiff's civil right to (*Equal Protection*) pursuant to the Fourteenth Amendment, was violated when defendant Safa retaliated against Plaintiff by terminating his inmate employment for filing grievances against the defendant;

g.  THAT Plaintiff's civil right to (*Equal Protection*) pursuant to the Fourteenth Amendment, was violated when defendant Safa retaliated against Plaintiff by issuing a negative work report for filing grievances against the defendant;

h.  THAT Plaintiff's civil right under policy and (*Eighth Amendment*) were violated by placing Plaintiff constant fear for his life was violated by defendant;

i.  THAT Plaintiff is entitled to the immediate removal of the negative work report, pursuant to PADOC policy and state law;

j.  THAT Plaintiff has been unlawfully retaliated against by the defendant;

k.  THAT the policies, practices, customs, and acts of the defendant as stated throughout this Complaint are illegal and unconstitutional;

l.  THAT the defendant has subjected Plaintiff to conditions peculiar to his confinement and engaged in conduct which caused Plaintiff to be subjected to the deprivation of one or more of his constitutional rights;

m.  THAT the defendant violated his statutory duty to protect Plaintiff;

n.  THAT defendant violated his statutory obligation to provide adequate, reasonable and timely care, custody, control, security, and well-being.

## COUNT II - INJUNCTIVE RELIEF
## 42 U.S.C. §1983

118. Plaintiff repeats and re-alleges each and every allegation contained herein and

18

throughout this Complaint with the same force and effect as if set forth herein at length.

119. Plaintiff avers that as a direct or proximate result of the acts and/or omissions of the above named defendant, as stated elsewhere in this Complaint, Plaintiff is entitled to Injunctive Relief and/or any judgment in equity so allowable under any cause of action not stated within these causes of actions, but to which the elements to such a claim has been made out.

120. WHEREFORE, the Plaintiff respectfully requests this Honorable Court to:

    a. Entry of a preliminary and a permanent injunction enjoining defendant, his officers, employees, agents, and all persons acting in concert with defendant, from violating the provisions of the Pennsylvania Department of Corrections Code of Ethics and directing defendant to expunge the fraudulent negative work report.

    b. Entry of a preliminary and a permanent injunction enjoining defendant, his officers, employees, agents, and all persons acting in concert with defendant, from violating the provisions of the Pennsylvania Department of Corrections Code of Ethics and directing defendant to cease the propagation of said negative work report across the Commonwealth telecommunications systems.

    c. Entry of a preliminary and a permanent injunction enjoining defendant, his officers, employees, agents, and all persons acting in concert with defendant, from violating the provisions of the Pennsylvania Department of Corrections Code of Ethics and directing defendant to cease the replication of said negative work report across the Commonwealth database and backup systems.

    d. Entry of a preliminary and a permanent injunction enjoining defendant, his officers, employees, agents, and all persons acting in concert with defendant, from violating the provisions of the Pennsylvania Department of Corrections Code of Ethics and directing defendant to reinstate Plaintiff's to the single-cell housing assigment from which was stripped away.

    e. Entry of a preliminary and a permanent injunction enjoining defendant, his successors in office, employees, agents and all other persons acting in active concert and participation with him in refusing to provide single-cell housing assigment to Plaintiff on the basis of retaliation, thereby enjoining the use of any policy, however stated, that actually precludes single-cell housing assigment

of inmates in response to them exercising their constitutional rights.

f. Entry of a preliminary and a permanent injunction enjoining defendant, his successors in office, employees, agents and all other persons acting in active concert and participation with him in interfering in any way with the Plaintiff's litigation activites.

g. Entry of a preliminary and a permanent injunction enjoining defendant, his successors in office, employees, agents and all other persons acting in active concert and participation with him in from making any remarks of a disparaging nature to or about Plaintiff.

h. Grant Plaintiff a permanent injunction enjoining defendant and all those acting in concert with it and at its direction, from engaging in any policy or practice which discriminates against inmates on the basis of their exercising constitutional rights.

i. Order defendant to make Plaintiff, insofar as he was adversely affected by the described policies and practices, whole by providing appropriate standard of care, custody, control, security, and well-being and other benefits in an amount to be shown at trial, and other relief including, but not limited to, reinstatement or reconsideration by defendant for Block Worker liberties provided to others.

j. Retain jurisdiction over this action to assure full compliance with the orders of this Honorable Court and with applicable law and require defendant to file such reports as this Honorable Court deems necessary to evaluate compliance.

k. Entry of a money judgment against defendant awarding the Plaintiff nominal damages.

l. Entry of a money judgment against defendant awarding the Plaintiff compensatory damages.

m. Entry of a money judgment against defendant awarding the Plaintiff punitive damages.

n. Entry of a money judgment against defendant awarding the Plaintiff pain and suffering damages.

o. Entry of a money judgment against defendant awarding the Plaintiff mental and

emotional anguish damages.

p.  An award to Plaintiff of his costs of suit, including reasonable attorney's fees.

q.  An award to Plaintiff of pre- and post-verdict interest, delay damages.

r.  An award to Plaintiff of such other and further relief as this Honorable Court deems just and proper.

## COUNT III - BREACH OF CONTRACT/THIRD-PARTY BENEFICIARY
## RESTATEMENT (SECOND) OF CONTRACTS; 42 U.S.C. §1983

121. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

122. At all times relevant, and as stated elsewhere in this Complaint, the defendant had assented to both a written and oral contract both express and implied, to provide care, custody, control, security, and well-being to care-dependent Plaintiff.

123. At all times material hereto, Plaintiff was under the care, custody, control, security, and attendance of the defendant, who was acting within the course and scope of his agency or employment, and under control or right of control of PADOC and/or the Commonwealth.

124. At all times material hereto, Plaintiff was a third-party beneficiary of the principal contract between defendant and PADOC, and also a third-party beneficiary of the quasi contracts between defendant and the Commonwealth of Pennsylvania, the Pennsylvania State Correctional Officer Association (PSCOA), and the Collective Bargaining Agreement (CBA).

125. The Defendant, by actions contrary to his sworn statutory obligation, has refused to provide said care, custody, control, security, and well-being to Plaintiff, thus breaching said written and oral agreement/contract both express and implied.

126. Pursuant to the agreements and understandings between defendant and PADOC, and defendant's position as a fiduciary under the circumstances, defendant was obligated to provide adequate care, custody, control, security, and well-being to third-party Plaintiff and was obligated to advise Plaintiff to seek outside assistance if he were unable to provide said

21

care.

127. Defendants failed to do so, in breach of the agreements and understandings between defendant and PADOC, the Commonwealth, PSCOA, and CBA.

128. Defendant's failure to provide care, custody, control, security, and well-being to Plaintiff, did breach the principal contract with PADOC and the quasi contracts with the Commonwealth of Pennsylvania, PSCOA, and CBA that obligated defendant to provide said care, custody, control, security, and well-being for care-dependent Plaintiff.

129. Defendant defrauded Plaintiff, PADOC, the Commonwealth, and PSCOA by causing them to believe Plaintiff was provided care, custody, control, security, and well-being by him

130. Defendant's failure to disclose to PADOC, the Commonwealth, and PSCOA the lack of care, custody, control, security, and well-being rendered to Plaintiff constituted fraudulent conduct which was intended to and did in fact deceive Plaintiff, PADOC, the Commonwealth, and PSCOA.

131. Defendant's actions were outrageous and malicious, were intended to defraud and cause injury to care-dependent Plaintiff.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other relief this Honorable Court deems appropriate.


## COUNT IV - ASSUMSIT
## RESTATEMENT (SECOND) OF CONTRACTS; 42 U.S.C. §1983

132. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

133. At all times relevant, and as stated elsewhere in this Complaint, the defendant had assented to both a written and oral contract both express and implied, to provide care, custody, control, security, and well-being to care-dependent Plaintiff.

134. At all times material hereto, Plaintiff was under the care, custody, control, security, and attendance of the defendant, who was acting within the course and scope of his agency or employment, and under control or right of control of PADOC and/or the Commonwealth.

135. At all times material hereto, Plaintiff was a third-party beneficiary of the principal contract between defendant and PADOC, and also a third-party beneficiary of the quasi contracts between defendant and the Commonwealth of Pennsylvania, the Pennsylvania State Correctional Officer Association (PSCOA), and the Collective Bargaining Agreement (CBA).

136. The Defendant, by actions contrary to his sworn statutory obligation, has refused to provide said care, custody, control, security, and well-being to Plaintiff, thus breaching said written and oral agreement/contract both express and implied.

137. Pursuant to the agreements and understandings between defendant and PADOC, and defendant's position as a fiduciary under the circumstances, defendant was obligated to provide adequate care, custody, control, security, and well-being to third-party Plaintiff and was obligated to advise Plaintiff to seek outside assistance if he were unable to provide said care.

138. Defendants failed to do so, in breach of the agreements and understandings between defendant and PADOC, the Commonwealth, PSCOA, and CBA.

139. Defendant's failure to provide care, custody, control, security, and well-being to Plaintiff, did breach the principal contract with PADOC and the quasi contracts with the Commonwealth of Pennsylvania, PSCOA, and CBA that obligated defendant to provide said care, custody, control, security, and well-being for care-dependent Plaintiff.

140. Defendant defrauded Plaintiff, PADOC, the Commonwealth, and PSCOA by causing them to believe Plaintiff was provided care, custody, control, security, and well-being by him.

141. Defendant's failure to disclose to PADOC, the Commonwealth, and PSCOA the lack of care, custody, control, security, and well-being rendered to Plaintiff constituted fraudulent conduct which was intended to and did in fact deceive Plaintiff, PADOC, the Commonwealth, and PSCOA.

142. Defendant's actions were outrageous and malicious, were intended to defraud and

cause injury to care-dependent Plaintiff.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other relief this Honorable Court deems appropriate.

**COUNT V - BREACH OF CONTRACT VIOLATION OF DUE PROCESS**

**U.S. CONST. AMEND. XIV; PA. CONST. ART. I §8;**

**RESTATEMENT (SECOND) OF CONTRACTS; 42 U.S.C. §1983**

143. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

144. Defendant had a contractual obligation and fiduciary duty to provide care, custody, control, security and well-being Plaintiff.

145. Defendant violated his contract to provide protection for the Plaintiff by failing to provide due process and by failing to follow the rules and guidelines mandated for the protection of Plaintiff after accepting the terms of the contract.

146. At all times relevant, and as stated herein and throughout this Complaint, defendant failed to issue/provide said care, custody, control, security, and well-being, for Plaintiff as required by PADOC policy, thus violated Plaintiff's due process rights.

147. Plaintiff avers that at all times relevant, was the beneficiary of the contract as stated elsewhere in this Complaint, and was at all times relevant, entitled to care, custody, control, security, and well-being as outlined in said contract.

148. Plaintiff avers that defendant had no legal right to withhold its issuance from Plaintiff without pre-deprivation due process of law, nor were they licensed or privileged to breach said contract without modification of the terms.

149. Defendant failure to provide said care, custody, control, security, and well-being to Plaintiff as contracted, denied Plaintiff Due Process of Law in violation of the Fourteenth

24

Amendment to the United States Constitution and Article I, Section 8 of the Constitution of the Commonwealth of Pennsylvania.

150. Defendant was required by contract for the issuance/performance of said care, custody, control, security, and well-being, as required by PADOC policy and the terms of the contract.

151. Defendant strategically circumvented the terms his contract owed to Plaintiff in violation of Plaintiff's legal right, thus denying Plaintiff to due process of law.

152. As a direct or proximate result of the defendant's violation of due process, and acts and/or conduct as stated elsewhere in this Complaint, Plaintiff was placed in constant fear for his life.

153. As a direct or proximate result of the defendant's acts and/or conduct, Plaintiff suffered severe and mental and emotional harm.

154. Plaintiff avers that at all times relevant, Plaintiff was entitled to the care, custody, control, security, and well-being provided to other similarly-situated individuals.

155. Plaintiff avers that he has no other remedy at law to obtain redress for the loss of care, custody, control, security, and well-being except through this action.

156. Plaintiff will suffer an injustice and injury if recovery of the terms of the contract are denied.

157. Plaintiff avers that defendant's acts were in consortium with other individuals and/or were due to Plaintiff's grievances and complaints to administrators.

158. The actions of defendant were arbitrary and capricious and the defendant failed to follow the required rules and regulations, and failed to provide fundamental fairness or due process.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other relief this Honorable Court deems appropriate.

## COUNT VI - INTENTIONAL/FRAUDULENT MISREPRESENTATION
## RESTATEMENT (SECOND) OF CONTRACTS/TORTS; 42 U.S.C. §1983

159. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

160. At all times relevant, defendant had, through deception, defrauded Plaintiff into believing he would receive by defendant the proper standard of care, custody, control, security and well-being to his persons and did the same without intent of actually providing it.

161. At all times relevant, and as stated elsewhere throughout this Complaint, defendant's intentional/fraudulent misrepresentations to Plaintiff was made to induce Plaintiff into believing care, custody, control, and security of Plaintiff's persons, was in fact to deceive Plaintiff, thus defrauded Plaintiff into believing in a false sense of safety and security.

162. At all times relevant, and as stated elsewhere throughout this Complaint, defendant's intentional/fraudulent misrepresentations to Plaintiff were contrived to induce Plaintiff into believing said care, custody, control, security, and well-being were in the control of defendant and could not be completed without his assistance, thus defrauded Plaintiff sense of security.

163. Defendant did agree to provide Plaintiff with the proper standard of fiduciary care, thus deceiving Plaintiff into believing he would receive fiduciary care, custody, control, security, and well-being required by the defendant and provided to other inmates.

164. Defendant's willful agreement to provide Plaintiff with the proper standard of fiduciary care, custody, control, security, and well-being, and intentional failure/refusal to provide such fiduciary care, custody, control and security as agreed upon, constitutes fraudulent conduct and negligent misrepresentation, which was intended to, and did deceive the Plaintiff into believing in such false hope of fiduciary care, custody, control, security, and well-being of his persons.

165. The defendant, upon several pleas for the return of said care, custody, control, security, and well-being by Plaintiff, has, and continues to refuse to provide Plaintiff with said care, custody, control, security, and well-being, thus demonstrating malicious desire to deprive

the Plaintiff thereof, and did so through and by fraud and negligent misrepresentation.

166. Defendant made the misrepresentations to Plaintiff with actual knowledge of the statements falsity at the time the statements were made, or in reckless disregard of their truth or falsity.

167. Plaintiff avers that defendant's actions were deliberate, wanton, malicious and specificically done to prevent Plaintiff from securing his persons and his future and to prevent Plaintiff from being secure in his persons, knowing that Plaintiff would have no other alternative to gain security of his persons.

168. As a direct or proximate result of the defendant's intentional/fraudulant misrepresentions, Plaintiff was defrauded out of his the care, custody, control, security, and well-being of his persons.

169. As a direct or proximate result of defendant's misrepresenting to Plaintiff that the care, custody, control, security, and well-being could not be completed without his fiduciary care, defrauded Plaintiff out of his sense of hope and security.

170. Plaintiff avers as a direct or proximate result of defendant's conduct as stated elsewhere throughout this Complaint, Plaintiff has lost his sense of care, custody, control, security, and well-being, fees and costs, including future earned income.

171. As a direct or proximate result of the defendant's acts and/or conduct as stated elsewhere in this Complaint, Plaintiff was unable to effectuate transactions on his own behalf.

172. As a direct or proximate result of the defendant's acts and/or conduct, Plaintiff suffered severe mental and emotional harm.

173. As a direct result of Plaintiff's reasonable reliance on such misrepresentations, Plaintiff has suffered damages as set forth above.

174. As a direct or proximate result of the defendant's acts and/or conduct, Plaintiff was prevented from continuing relationships by the intentional stymieing of his records.

175. Plaintiff avers that he has no other remedy at law to obtain redress for these losses except through this action.

176. Plaintiff will suffer an injustice and injury if recovery of the stolen property is denied.

177. Plaintiff avers that defendant's acts were in consortium with others, and that they collectively planned to cause injury to Plaintiff and place Plaintiff under duress, intimidation, embarrassment, harassment, humiliation, ostracization, ridicule, threats or by other means.

178. Plaintiff avers that defendant's acts were in consortium with others, and that they collectively planned to cause injury to Plaintiff, knowing it would cause Plaintiff suffer humiliation, for their own benefit.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other relief this Honorable Court deems appropriate.

## COUNT VII - BREACH OF FIDUCIARY DUTY
## RESTATEMENT (SECOND) OF CONTRACTS/TORTS; U.S. CONST. AMEND. VIII; 42 U.S.C. §1983

179. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

180. At all times material hereto, defendant had a contractual and statutorial obligation as a fiduciary to provide care, custody, control, security, and well-being to Plaintiff.

181. At all times material hereto, the defendant had assented to the written contract and statutorial obligation to act as a fiduciary to the Plaintiff.

182. At all times material hereto, there have been no gaps in the obligation for defendant to provide care, custody, control, security, and well-being to Plaintiff.

183. Pursuant to the contract and/or statutorial obligation of defendant as a fiduciary under the circumstances, defendant is obligated to act as a fiduciary to provide care, custody, control, security, and well-being for Plaintiff.

184. At all times relevant, and as stated elsewhere in this Complaint, the defendant had assented to said fiduciary duty, to provide care, custody, control, security, and well-being to Plaintiff and made said agreement willing.

185. The fiduciary relationship between defendant and the Plaintiff obligates defendant to conduct himself fairly and with due care, diligence, and in good faith, and in an open and honest manner.

186. The fiduciary relationship between defendant and the Plaintiff obligates defendant to act with scrupulous good faith and candor on behalf of the Plaintiff, and to use common sense, consciousness, honesty.

187. The fiduciary relationship between defendant and the Plaintiff obligates defendant to use reasonable prudence and judgement.

188. In this fiduciary relationship, defendant was obligated to protect, care for, secure, and defend Plaintiff in good faith.

189. Defendant was also obligated to cooperate in good faith with Plaintiff.

190. This fiduciary obligation should not permit defendant to subject Plaintiff to continued hardship or to years of wasteful litigation.

191. Defendant is contractually obligated to defend Plaintiff's security and well-being, not to treat Plaintiff carelessly and then marshal resources against Plaintiff.

192. Defendant owed a fiduciary duty to Plaintiff to act in the best interests of Plaintiff's care, custody, control, security, and well-being to Plaintiff and to act in the best interests of the Commonwealth as *parens patriae* to care for its more dependent citizens.

193. Defendant knowingly violated the duties of trust and care owed to Plaintiff and the Commonwealth.

194. The acts and/or omissions by defendant were willful and malicious, done in bad faith, and for the purpose of injuring Plaintiff.

195. The acts and/or omissions by defendant were committed intentionally, deliberately, maliciously, and fraudulently to cause foreseeable harm to Plaintiff, and done with the foreseeable knowledge substantial harm and damage would ensue.

196. Plaintiff had reason to believe he could rely on and in fact did rely to his detriment, on the defendant fulfilling his fiduciary duties and obligations as set forth in statue and defendant's written contract with PADOC, including those set forth herein and throughout this

29

Complaint.

197. Defendant negligently and carelessly breached and violated his fiduciary duties and obligations owed to Plaintiff.

198. Defendant's breach of his fiduciary duties caused direct, proximate and substantial foreseeable harm to Plaintiff.

199. Defendant breached his fiduciary duty by failing to provide care, custody, control, security, and well-being for Plaintiff, as agreed.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other relief this Honorable Court deems appropriate.

## COUNT VIII - FRAUD AND DECEIT
## RESTATEMENT (SECOND) OF CONTRACTS/TORTS; 42 U.S.C. §1983

200. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

201. At all times material hereto, the defendant maintained all documents concerning past and present incidents, activities, and practices and was responsible for updating said documents through their contractual fiduciary duty.

202. Defendant has in his possession, care, custody, control, and security documents that govern her fiduciary duty and obligations to the Plaintiff.

203. Defendant signed a contractual obligation to abide by an ethical code of conduct as a fiduciary of Plaintiff.

204. Defendant is aware of statements, documents, photographs, recordings, videotapes, reports, referrals, and other materials concerning the factual averments described in this Complaint.

205. During the period Plaintiff began his incarceration, continuing to the present, Plaintiff

30

and defendant were engaged in a contractual fiduciary relationship.

206. During said relationship, defendant made material representations and withheld material and important information concerning the care, custody, control, security, and well-being of Plaintiff by failing to disclose his fraudulent activity and dereliction of duties.

207. Plaintiff expected to be provided the care, custody, control, security, and well-being owed by defendant and defendant's sworn duty was to provide said care to Plaintiff.

208. Defendant was obligated to provide the care, custody, control, security, and well-being owed to Plaintiff, yet defendant knew that said care would not be provided by defaming Plaintiff to third-parties with the intent to cause Plaintiff foreseeable physical and financial harm.

209. Defendant knew that said representations were false when he made them in that he knew that said care, custody, control, security, and well-being could not be provided after labeling Plaintiff a "rat."

210. Defendant's failure to disclose the breach of care, custody, control, security, and well-being was intended to induce Plaintiff into a false sense of security.

211. Plaintiff justifiably relied upon the misrepresentation and failure to disclose the important and material facts, based upon what he thought was an open and honest fiduciary relationship.

212. Based upon said representation, Plaintiff did continue to trust defendant and as such suffered a deteriorating financial, emotional and mental condition.

213. Defendant's conduct in failing to disclose the above-relevant, material and important facts to Plaintiff as well as the material misrepresentations to Plaintiff made by defendant, has directly caused Plaintiff to suffer injuries and damages which include, but are not necessarily limited to the following: panic attacks, self-harm, embarrassment, humiliation, harassment, intimidation, ostracization, GastroEsophageal Reflux Disease (GERD), Post-Traumatic Stress Disorder (PTSD), hypertension, heart palpitations, chest pains, constipation, anxiety, worry, depression, insomnia, a complete disfunction of Plaintiff's circadian rhythm, loss of enjoyment of life, damage to reputation, mental anguish and distress.

31

214. As a further result of the conduct of defendant as aforesaid, Plaintiff has undergone medical treatment and care and psychological counseling and which medical expenses will continue in the future, all to the great detriment and financial loss of Plaintiff.

215. Defendant made the representations to Plaintiff with actual knowledge of their falsity at the time they were made, or in reckless disregard of their truth or falisty.

216. The net effect of defendant's retaliatory misconduct and defamation was to hinder, delay, and defraud Plaintiff and others, and was an integral part of defendant's plan and scheme to injure the Plaintiff.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other relief this Honorable Court deems appropriate.

## COUNT IX - BAD FAITH

## RESTATEMENT (SECOND) OF CONTRACTS/TORTS; 42 U.S.C. §1983

217. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

218. Defendant lacked good faith which resulted in the violation state and federal laws in retaliating and defaming Plaintiff.

219. Defendant's abuse of was willful, wanton, and purposeful in denying Plaintiff's rights.

220. Plaintiff's interests were clearly established and defined by the existing PADOC rules, PADOC Code of Ethics, as well as state and federal constitutional protections that support Plaintiff's claims.

221. Upon information and belief, defendant has no reasonable or sufficient basis for concluding that the fiduciary obligation of defendant's care, custody, control, security, and well-being of Plaintiff was not due to Plaintiff at the time the retaliatory and defamation misconduct was committed.

222. Defendant acted in bad faith to deny Plaintiff's rights secured to him by state and federal constitutions.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other relief this Honorable Court deems appropriate.

## COUNT X - CONSPIRACY
## RESTATEMENT (SECOND) OF TORTS; 42 U.S.C. §1983

223. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

224. At all times relevent, and as stated elsewhere in this Complaint, defendant did conspire with others, others unknown to Plaintiff, to cause injury to Plaintiff.

225. At all times relevent, and as stated elsewhere in this Complaint, defendant did conspire with others unknown to Plaintiff, to misrepresent to Plaintiff that the care, custody, control and security of Plaintiff's was being provided, thus defrauded Plaintiff out of the the same.

226. Defendant made the misrepresentations to Plaintiff with actual knowledge of the statements falsity at the time the statements were made, or in reckless disregard of their truth or falsity.

227. At all times relevant, and as stated elsewhere in this Complaint, defendant's conspiracy to intentionally misrepresent the facts to Plaintiff was contrived to induce Plaintiff into believing said care, custody, control, security, and well-being would be provided, thus defrauded Plaintiff out of the same.

228. As a direct or proximate result of defendant's misrepresentions, defendant defrauded Plaintiff out of the aforesaid.

229. Defendant conpired to misrepresent specious allegations to the Plaintiff and others

with actual knowledge of the statements falsity at the time the statements were made, or in reckless disregard of their truth or falsity.

230. Plaintiff avers that defendant's actions were deliberate, wanton, malicious and specificically done to prevent Plaintiff from becoming financially stable so as to prevent Plaintiff from having control over his own affairs and person, and knowing that Plaintiff intended secure said chattels with the intent to save for his own future.

231. As a direct or proximate result of the defendants acts and/or conduct, Plaintiff was placed in excess foreseeable harm.

232. Plaintiff avers as a direct or proximate result of defendant's conduct as stated elsewhere in this Complaint, including fees and costs, and loss of future earned income.

233. As a direct or proximate result of the defendant's acts and/or conduct as stated elsewhere in this Complaint, Plaintiff was unable to effectuate transactions on his own behalf.

234. Plaintiff avers with the negative work report on his record, Plaintiff is unable to satisfy the requirements for the Pennsylvania Board of Pardons and Parole.

235. As a direct or proximate result of the defendant's acts and/or conduct, Plaintiff suffered severe mental and emotional harm.

236. As a direct or proximate result of the defendant's acts and/or conduct, Plaintiff is prevented from continuing to pursue his freedom by defendant's intentional stymieing of the affairs of the Plaintiff.

237. Plaintiff avers that he has no other remedy at law to obtain redress except through this action.

238. Plaintiff will suffer an injustice and injury if recovery is denied.

239. Plaintiff avers that defendant's acts were in consortium with others unknown to Plaintiff, and that they collectively planned to take have Plaintiff lose his potential for commutation and/or pardon while placing Plaintiff under duress, intimidation, threat or by other means.

240. Plaintiff avers that defendant's acts were in consortium with others unknown to Plaintiff, and that they collectively planned to cause injury to Plaintiff for their own financial

benefit.

241. Plaintiff avers that defendant's actions were deliberate, wanton, malicious and specificically done to prevent Plaintiff from securing his own future so as to prevent Plaintiff from having control over affairs and his persons, and knowing that Plaintiff was in the process of being reviewed for commutation.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other relief this Honorable Court deems appropriate.

## COUNT XI - CIVIL RIGHTS VIOLATIONS
## U.S. CONST. AMEND. I, VIII, IX; 42 U.S.C. §1983

242. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

243. This court's jurisdiction in invoked pursuant to 28 U.S.C. §1331.

244. Defendant, with knowledge of Plaintiff's right to care, custody, control, security, and well-being and/or with deliberate indifference to such right, had acted or failed to act in such a way as to deprive Plaintiff of necessary and adequate confinement conditions appropriate to his condition, thereby endangering the Plaintiff's security, health and well-being. Such acts and omissions of the defendants violate rights secured to the Plaintiff under the First, Eighth, and Fourteenth Amendments.

245. Defendant, with knowledge of Plaintiff's needs for health, security, and well-being and/or with deliberate indifference to such state of being, have acted or failed to act in such a way as to deprive Plaintiff of necessary and adequate confinement conditions appropriate to his survival, thereby endangering the Plaintiff's security, health and well-being. Such acts and omissions of the defendants violate rights secured to the Plaintiff under the First, Eighth, and Fourteenth Amendments.

246. Defendant, knowing of the needs of the Plaintiff and with deliberate indifference to the inadequacies and deficiencies in the staffing and security procedures at State Correctional Institute at Phoenix, have failed and neglected to establish and implement policies, practices and procedures designed to assure that Plaintiff would receive confinement conditions appropriate for his survival at the standards therefor in the State Correctional Institute at Phoenix, or has adopted policies, practices and procedures which defendant knew, or reasonably should have known, would be ineffective in delivering such standards, thereby endangering Plaintiff's security, health and well-being in violation of rights secured to Plaintiff by the First, Eighth, and Fourteenth Amendments.

247. Defendant, knowing of the security, and well-being needs of the Plaintiff and with deliberate indifference to such needs, have failed to assure the delivery of confinement conditions consistent with said standards, thereby endangering the Plaintiff's security, health and well-being in violation of the First, Eighth, and Fourteenth Amendments.

248. The defendant's actions and/or omissions were negligent and/or reckless and/or intentional.

249. The defendant's actions and/or omissions were committed under color of law and/or pursuant to policies, customs, practices, rules, regulation, ordinances, statues and/or usages of the State of Pennsylvania, the Department of Corrections and/or State Correctional Institute at Phoenix.

250. These actions have served to deprive the Plaintiff of his civil rights, as previously outlines, under color of law, and hence violate the United States Constitution and are actionable under 42 U.S.C. §1983.

251. As a direct result of defendant's reckless and negligent conduct, Plaintiff sustained physical injuries including, but not limited to, panic attacks, self-harm, embarrassment, humiliation, harassment, intimidation, ostracization, GastroEsophageal Rèflux Disease (GERD), Post-Traumatic Stress Disorder (PTSD), hypertension, heart palpitations, chest pains, constipation, anxiety, worry, depression, insomnia, a complete disfunction of Plaintiff's circadian rhythm, loss of enjoyment of life, damage to reputation, mental anguish and distress.

36

252. As a direct result of defendant's reckless and negligent conduct, Plaintiff has suffered and will continue to suffer great pain, embarrassment, mental anguish, and loss of the enjoyment of life.

253. As a direct result of defendant's reckless and negligent conduct, Plaintiff has expended and will be required to expend large sums of money for medical services and treatment of the physical and mental injuries described herein and throughout the Complaint.

254. As a direct result of defendant's reckless and negligent conduct, Plaintiff has been and will be deprived of earnings.

255. Plaintiff's injuries, as herein set forth, were directly and proximately caused by the carelessness, negligence, and deliberate indifference of defendant, and included but are not necessarily limited to the injuries described throughout this Complaint, all of which have continued to the present, are permanent in nature, and are expected to continue throughout Plaintiff's lifetime.

256. As a direct result of the aforementioned injuries, Plaintiff has suffered, and will continue to suffer for an indefinite time in the future, great physical pain and mental anguish, to his great detriment and loss.

257. As a further result of the aforementioned injuries, Plainitff has suffered a marked loss of earnings and depreciation of his earning capacity, and will continue to suffer such loss and depreciation for an indefinite time in the future, to his great detriment and loss.

258. As a further result of the aforementioned injuries, Plaintiff has been unable to attend to and perform his usual and daily duties, occupation, avocations, and labors, and will continue to be so disabled for an indefinite time in the future, to his great detriment and loss.

259. As a further result of the aforementioned injuries, Plaintiff was caused to and did suffer bodily and personal injury, including but not limited to, mental anguish, loss of capacity for the enjoyment of life, medical care, treatment and costs associated therewith and the loss of past and future earning capacity. These losses are permanent and continuing in nature.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages,

with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other relief this Honorable Court deems appropriate.

## COUNT XII - NEGLIGENCE/GROSS NEGLIGENCE/NEGLIGENCE *PER SE* RESTATEMENT (SECOND) OF TORTS; 42 U.S.C. §1983

260. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

262. Defendant had a statutory duty to care for care-dependent Plaintiff and had willingly agreed to such duty.

263. Defendant had agreed to the duty to care for Plaintiff, by failing to do so, defendant did breach that duty, thus depriving the Plaintiff of the proper standard of care, and causing injury to the Plaintiff.

264. Defendant's agreement to the duty to care, and intentional failure/refusal to provide such care as agreed, constitutes negligence and/or gross negligent conduct which was intended to cause foreseeable harm Plaintiff.

265. Defendant owed a statutory duty to Plaintiff to treat him as one reasonable prudent person would treat his care-dependent individual.

266. Defendant's continual course of negligence constitutes a breach of that duty.

267. As a direct result of defendant's reckless and negligent conduct, Plaintiff sustained physical injuries including, but not limited to, panic attacks, self-harm, embarrassment, humiliation, harassment, intimidation, ostracization, GastroEsophageal Reflux Disease (GERD), Post-Traumatic Stress Disorder (PTSD), hypertension, heart palpitations, chest pains, constipation, anxiety, worry, depression, insomnia, a complete disfunction of Plaintiff's circadian rhythm, loss of enjoyment of life, damage to reputation, mental anguish and distress.

268. As a direct result of defendant's reckless and negligent conduct, Plaintiff has suffered and will continue to suffer great pain, embarrassment, mental anguish, and loss of the enjoyment of life.

269. As a direct result of defendant's reckless and negligent conduct, Plaintiff has expended and will be required to expend large sums of money for medical services and treatment of the physical and mental injuries described herein and throughout the Complaint.

270. As a direct result of defendant's reckless and negligent conduct, Plaintiff has been and will be deprived of earnings.

271. Plaintiff's injuries, as herein set forth, were directly and proximately caused by the carelessness, negligence, and deliberate indifference of defendant, and included but are not necessarily limited to the injuries described throughout this Complaint, all of which have continued to the present, are permanent in nature, and are expected to continue throughout Plaintiff's lifetime.

272. As a direct result of the aforementioned injuries, Plaintiff has suffered, and will continue to suffer for an indefinite time in the future, great physical pain and mental anguish, to his great detriment and loss.

273. As a further result of the aforementioned injuries, Plainitff has suffered a marked loss of earnings and depreciation of his earning capacity, and will continue to suffer such loss and depreciation for an indefinite time in the future, to his great detriment and loss.

274. As a further result of the aforementioned injuries, Plaintiff has been unable to attend to and perform his usual and daily duties, occupation, avocations, and labors, and will continue to be so disabled for an indefinite time in the future, to his great detriment and loss.

275. As a further result of the aforementioned injuries, Plaintiff was caused to and did suffer bodily and personal injury, including but not limited to, mental anguish, loss of capacity for the enjoyment of life, extensive medical care, treatment and costs associated therewith and the loss of past and future earning capacity. These losses are permanent and continuing in nature.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other

relief this Honorable Court deems appropriate.

## COUNT XIII - DEFAMATION OF CHARACTER - LIBEL AND SLANDER *PER SE*
## RESTATEMENT (SECOND) OF TORTS; 42 U.S.C. §1983

276. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

277. At all times material hereto, Plaintiff has enjoyed not only the confidence of his official superiors, but the esteem and respect of all who knew him and of the prison community in general. Plaintiff has never been guilty of "rating" and/or "poor work performance," or any similar offense; but has on the contrary always discharged his duties with strict integrity.

278. On or about April 8 2023, the defendant, well knowing the truth of the matters alleged herein and throughout this Complaint, and intending to injure Plaintiff by depriving him of his good name, and further intending to cause Plaintiff to be removed from his job opportunity, maliciously, wickedly created and published a negative work report in the PADOC documentation system, containing scandalous, defamatory and libelous statements and concerning the Plaintiff.

279. Defendant published the negative work report in the documentation system that was thereby propagated throughout the network, integrated with other applications and seen by all State-wide servants, workman, independant-contractors, consultants, and/or employees accessing DOCNET, SAPPHIRE, CAPTURE, and/or paper copies of Plaintiff's file.

280. Plaintiff was defamed to others by the false statements and false documentation of defendant that were known or should have known to be false when made, that Plaintiff was not "rating" on anyone, only exercising his constitutional right to file grievances.

281. Plaintiff avers that the statements and charges identified herein are wholly false, in that Plaintiff has never been accused of "rating" and has maintained at least an average or above work performance for more than 12 years.

282. Plaintiff avers that the statements and charges identified herein were done to retaliate against Plaintiff for filing a grievance against defendant.

283. Defendant made disparaging comments to third-parties about the Plaintiff, knowing the statements were false and designed to defame and otherwise harass the Plaintiff.

284. Defendant made disparaging comments to third-parties about the Plaintiff, knowing the statements were likely to cause foreseeable physical and financial harm to the Plaintiff, and/or threaten his physical and financial security.

285. At the time of the publication and false statements made to third-parties, defendant knew that the statements and negative work report identified herein were false, or acted with reckless disregard for their truth or falsity.

286. As a result of the defendant's actions, Plaintiff has been brought into reproach and has been injured in his good name, his credit, his personal and professional reputation, and his feelings, to his great detriment and financial loss.

287. It is extreme and outrageous to discuss Plaintiff's official grievance filings with third-parties with the intent to cause foreseeable physical harm to Plaintiff.

288. It is extreme and outrageous for defendant to publish false statements and disparaging comments about Plaintiff for third-parties to read, with the intent to cause foreseeable financial harm to Plaintiff.

289. It is extreme and outrageous for defendant to publish false statements and disparaging comments about Plaintiff for third-parties to read, with the intent to have Plaintiff's commutation denied by the governor of the Commonwealth of Pennsylvania and the Board of Pardons and Parole.

290. Due to the defamation that Plaintiff was subjected to, Plaintiff has suffered the following bodily and emotional injuries:

    a. embarrassment;

    b. humiliation;

    c. intimidation;

    d. ostracization;

    e. panic attacks;

    f. GastroEsophageal Reflux Disease (GERD);

41

g.  Post-Traumatic Stress Disorder (PTSD);

h.  hypertension;

i.  heart palpitations;

j.  chest pains;

k.  constipation;

l.  anxiety;

m.  worry;

n.  depression;

o.  insomnia;

p.  disfunction of circadian rhythm;

q.  loss of enjoyment of life;

r.  damage to reputation; and,

s.  mental anguish and distress.

291. As a result of defendant's defamatory statements and publications, Plaintiff is entitled to damages, *per se*.

292. Defendant was not acting within the scope of his employment duties when he relayed false information to other inmates about Plaintiff. Defendant is not eligible for any immunity as the false statements were made outside of the context of his job description and duties, and were in violation of the PADOC's own rules, policies, and ethical standards.

293. Defendant's conduct in defaming Plaintiff was also intentional or engaged in with reckless disregard for Plaintiff and Plaintiff's safety, and was thus outrageous, permitting an award of punitive damages.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other relief this Honorable Court deems appropriate.

42

## COUNT XIV - RETALIATION

### U.S. CONST. AMEND. I; PA. CONST. ART. I §20; 42 U.S.C. §1983

294. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

295. At all times material hereto, and as stated elsewhere in this Complaint, defendant violated Plaintiff's First Amendment Right to Free Speech by intentionally retaliating against Plaintiff for filing grievances, complaining to administrators, and using the courts.

296. Plaintiff believes, and therefore avers, that said retaliatory conduct was in response to the exercise of Plaintiff's First Amendment Rights, and that such conduct **did not** constitute a violation of an PADOC policies or regulations.

297. Plaintiff believes, and therefore avers, that said retaliatory conduct by above-named defendant was in violation of, *inter alia*, the PADOC Code of Ethics and policies, as well as state and federal law.

298. Plaintiff believes, and therefore avers, that said retaliatory conduct by above-named defendant was in direct response to Plaintiff filing grievances, complaining to administrators, and using the courts.

299. Plaintiff believes, and therefore avers, that said conduct by above-named defendant did not further a legitimate penological interest, but rather sought to suppress the intent and purpose of the Plaintiff seeking justice.

300. Plaintiff believes, and therefore avers, that the acts done by defendant were arbitrary and capricious.

301. The Plaintiff was performing protected conduct under, *inter alia*, the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania and the defendant took adverse actions against the Plaintiff and treated him differently than other similarly-situated individuals.

302. As a direct and proximate result of above-named defendant's retaliatory actions, Plaintiff is in great fear of exercising his First Amendment Rights, which include, but is not limited to: (1) filing further grievances, (2) complaining to administrators, (3) pursuing

43

commutation.

303 . As a direct and proximate result of above-named defendant's retaliatory actions, Plaintiff is in great fear of further retaliation in the form of being assaulted by other prisoners to curry favor with the defendant.

304. As a direct and proximate result of above-named defendant's retaliatory actions, Plaintiff is in great fear of further retaliation in the form of having property illegally confiscated and withheld.

305. As a direct and proximate result of above-named defendant's retaliatory actions, Plaintiff is in great fear of further retaliation in the form of being placed on Administrative Custody Status under the specious assertion that Plaintiff poses a threat to the institution or other prisoners.

306. Plaintiff avers above-named defendants' actis of retaliation were sufficient to deter Plaintiff - a person of ordinary firmness - from exercising his constitutional rights.

307. Defendant acted in concert and without authorization of law, willfully, knowingly and purposefully, with the specific intent of depriving Plaintiff his constitutional rights to, *inter alia*, care, custody, control, safety, security, liberty, and well-being.

308. As a direct and proximate cause and consequence of the totality of the conduct, acts, and/or omissions of the defendant, the Plaintiff was subjected to, *inter alia*:

      a.  1st Amendment infringement to legitimate protest;

      b.  8th Amendment deliberate indifference;

      c.  8th Amendment cruel and unusual punishment;

      d.  14th Amendment unjustified intrusions upon physical security;

      e.  14th Amendment bodily-risks in peculiar circumstances;

      f.   14th Amendment deprivation of safety, health, well-being, security;

      g.  Torts of: negligence, neglect, harassment;

309. Defendant's retaliatory misconduct as to Plaintiff was inflicted with malice and reckless indifference to the federal and state protections of care-dependent Plaintiff.

310. Defendant was not acting within the scope of his employment duties when he falsified

a negative work report about Plaintiff in retaliation for stating he was filing a grievance; and defendant is not eligible for any immunity as the false oral and written statements were made outside of the context of his job description and duties, and in violation of the PADOC's own rules, policies, and ethical standards.

311. As a direct and proximate result of defendant's retaliation, Plaintiff has been deprived of benefits including, but not limited to: exclusion from the meaningful access and full and equal enjoyment of, *inter alia*, the work program of a public entity.

312. Defendant's retaliation on Plaintiff has caused, continues to cause, and in the future will cause the Plaintiff to suffer substantial damages, percuniary losses, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other relief this Honorable Court deems appropriate.

## COUNT XV - EQUAL PROTECTION (CLASS OF ONE THEORY)
## U.S. CONST. AMEND. XIV; PA. CONST. ART. I §20; 42 U.S.C. §1983

313. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

314. Defendant treated Plaintiff differently from others similarly-situated individuals.

315. At all times material hereto, and as stated elsewhere in this Complaint, defendant failed to take action to protect Plaintiff pursuant to his training and/or PADOC Code of Ethics and policies.

316. Defendant's intentional breaches of his fiduciary duty caused direct, proximate, and substantial harm to Plaintiff.

317. Evidence shows that defendant intentionally treated similarly-situated individuals different from the Plaintiff and that the disparate treatment lacked any rational basis or

45

penological interest.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other relief this Honorable Court deems appropriate.

## COUNT XVI - FAILURE TO PROTECT
## U.S. CONST. AMEND. VIII; 42 U.S.C. §1983

318. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

319. Plaintiff brings this count against defendant for his deliberate indifference to the constitutional rights of Plaintiff, while having the authority to abstain in the abuse of Plaintiff, failed to exercise such authority, after being sworn to protect Plaintiff, that said care, custody, control, security, and well-being would be provided to Plaintiff illegally withheld said care, thus causing injury and suffering to Plaintiff, while failing to protect the Plaintiff.

320. At all times material hereto, and as stated elsewhere in this Complaint, defendant failed to take action to protect Plaintiff pursuant to his training and/or PADOC Code of Ethics and policies.

321. At all times material hereto, and as stated elsewhere in this Complaint, defendant acquiesced in the malicious and sadistic acts, failed to exercise personal objections to the illegal treatment of Plaintiff, in violation of, *inter alia*, the United States Constitution, Constitution of the Commonwealth of Pennsylvania, and PADOC Code of Ethics and policies.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other relief this Honorable Court deems appropriate.

46

## COUNT XVII - FAILURE TO WARN

## U.S. CONST. AMEND. VIII; 42 U.S.C. §1983

322. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

323. Pursuant to his defined statutory duties to the Plaintiff, the defendant had a duty to warn Plaintiff of unnecessary and foreseeable risks of injury to his person.

324. Pursuant to his job description and job duties owed to the Plaintiff, the defendant had a duty to warn the Plaintiff if he were changing his position to provide care, custody, control, security, and well-being to the Plaintiff.

325. Defendant failed to provide the proper standard of care to the Plaintiff, which, at a minimum, should have included a discussion with the Plaintiff prior to taking adverse action against him, thereby putting his health, safety, security, and well-being in grave danger.

326. Pursuant to his respective duties and statutory obligations owed to Plaintiff, the defendant had a duty to warn Plaintiff his work report would negatively impact him, prior to removing Plaintiff from his work assignment.

327. Pursuant to his respective duties and statutory obligations owed to Plaintiff, the defendant had a duty to warn Plaintiff his work report would negatively impact him, prior to filing said negative work report.

328. Pursuant to his respective duties and statutory obligations owed to Plaintiff, the defendant had a duty to warn Plaintiff his work report would negatively impact Plaintiff's commutation and/or pardon, prior to filing said negative work report.

329. Pursuant to his respective duties and statutory obligations owed to Plaintiff, the defendant had a duty to warn Plaintiff he would be negatively impacted by the labeling of being a "rat", prior to telling other inmates on the housing unit he was a "rat".

330. By taking a position with respect to Plaintiff's work program  which was contrary to any prior position taken by defendant over the past 18 years, defendant had breached his duty to warn Plaintiff.

47

331. In failing to make reasonable warnings to Plaintiff that other inmates were going to assault him, defendant acted with reckless indifference to the state and federal protective rights of the Plaintiff.

332. As a direct and proximate result of defendant's retaliation, Plaintiff was ejected from the work program, ostracized by the inmate community, and exasperated Plaintiff's chance of being commuted and/or pardoned, and Plaintiff has suffered the loss of benefits, friendships, and opportunities.

333. By reason of the foregoing, Plaintiff has been deprived of the meaningful access and full and equal rights and enjoyment, *inter alia*, of the work program of a public entity that receives federal funding, and has suffered from, including but not limited to: panic attacks, self-harm, embarrassment, humiliation, harassment, intimidation, ostracization, GastroEsophageal Reflux Disease (GERD), Post-Traumatic Stress Disorder (PTSD), hypertension, heart palpitations, chest pains, constipation, anxiety, worry, depression, insomnia, a complete disfunction of Plaintiff's circadian rhythm, loss of enjoyment of life, damage to reputation, mental anguish and distress.

334. Plaintiff's injuries and pain and suffering were a direct and proximate result of the negligence, carelessness, and recklessness of defendants and not any action or inaction on part of the Plaintiff.

335. Due to defendant's breach of duty and contractual obligations, Plaintiff has suffered and continues to suffer direct and consequential harm and expense, including, without limitation, the costs of maintaining this action for which defendant is fully liable to Plaintiff.

336. Defendant's breaches of his fiduciary duty caused direct, proximate, and substantial harm to Plaintiff.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other relief this Honorable Court deems appropriate.

## COUNT XVIII  - CRUEL AND UNUSUAL PUNISHMENT/FACILITATING ASSAULT
## U.S. CONST. AMEND. VIII; 42 U.S.C. §1983

337. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

338. This count is brought against Defendant Safa pursuant 42 U.S.C. § 1983, Eighth Amendment, for deliberate indifference  to the health and safety of Plaintiff.

339. Defendant had personal knowledge of a substantial risk of serious harm to Plaintiff when defendant called Plaintiff a rat/snitch to other prisoners, and that such knowledge was deliberately indifferent to Plaintiff's health and safety, and therefore violated Plaintiff's Eighth Amendment right to be free from Cruel and Unusual punishment.

340. Plaintiff avers that the actions of defendant in calling Plaintiff a rat/snitch in the presence of other inmates was done in retaliation for Plaitiff filing grievances against the Defendant , with the intent of causing the Plaintiff to be assaulted.

341. The failure of defendant to act on his knowledge of a substantial risk of serious harm to Plaintiff was deliberately indifferent, and violated Eighth Amendment right to be free from Cruel and Unusual punishment.

342. Defendant's conduct violated the rights, privileges and immunity's guaranteed by the Eighth Amendment.

343. Defendant's acts as stated elsewhere in this complaint, were committed against Plaintiff for the sole purpose of retaliation and done maliciously and sadistically to cause injury and harm to Plaintiff.

344. Plaintiff avers that defendant demonstrated deliberate indifference to Plaintiff's life and safety by calling a rat/snitch in the presence of other inmates which is notoriously known to cause prisoners to be assaulted.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other

relief this Honorable Court deems appropriate.

## COUNT XIX - RETALIATION /FACILITATING ASSAULT
## RESTATEMENT (SECOND) OF TORTS; 42 C.S.A. §8522(b); 42 U.S.C. §1983

345. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

346. Defendant was not acting within the scope of his employment/duties when maliciously and sadistically placing Plaintiff at risk of assault.

347. Defendant Safa intended to cause harm or offensive contact with the Plaintiff, and that such contact actually occurred.

348. Defendant intended to place Plaintiff in reasonable and immediate apprehension of harmful or offensive contact, and that said statements that Plaintiff was a rat/snitch did cause such apprehension.

349. Defendant's statement were intended to inflict this contact and took affirmative actions to do so.

350. Plaintiff avers that defendant's actions were unreasonable in the use of sais statement in relation to his employment duties.

351. As stated elsewhere in this complaint, the actions of defendant was done without any privilege or right to place Plaintiff in danger of assault as said conduct violated state law, and were committed contrary to Department Code of Ethics and Policy.

352. As stated elsewhere in this complaint, the actions of defendant was committed without need or provocation, as Plaintiff in no way obstreperous, and said statement were not made in good-faith in an effort to maintain or restore discipline, but rather inflicted maliciously ans sadistically to cause injury and harm to Plaintiff.

353. The above acts as stated elsewhere in this complaint, were committed against Plaintiff for the sole purpose of retaliation and to inflict unnecessary pain, discomfort and injury, and that the defendant's statement were not applied in good-faith in an effort to maintain or restore discipline, but rather inflicted maliciously ans sadistically to cause injury and harm to

Plaintiff.

354. Plaintiff avers that at all times relevant to the above mentioned conduct, defendant was not acting in jhis official capacity or under the color of state law, as above mentioned conduct was not within his job description, or sanctioned by policy or Department Code of Ethics,thus the defendant does not enjoy immunity from suit.

355. At all times relevant, Plaintiff was engaging in a constitutionally protected activity.

356. The defendant's acts as stated elsewhere in this Complaint, were committed against Plaintiff for the sole purpose of retaliation.

357. The actions of defendant in calling the Plaintiff a "rat" in the presence of other inmates was done in retaliation for the Plaintiff filing grievance against the defendant.

358. Defendant had personal knowledge of a substantial risk of serious harm to Plaintiff when the defendant called Plaintiff a rat/snitch to other prisoners, and that such conduct constituted assault and battery.

359. Plaintiff avers that he has a protected First Amendment Right to free speech, and implicit in that right, is the right to engage in constitutionally protected activities.

360. At all times relevant as stated elsewhere in this complaint, defendant Safa violated Plaintiff's First Amendment Right ot Free Speech by intentioanally retaliating against Plaintiff for filing grievances.

361. Plaintiff avers that said conduct by defendant Safa was in direct response to Plaintiff filing grievances.

362. Plaintiff avers that defendant's retaliatory action did not futher a legitimate penological goal.

363. As a direct or proximate result of defendant's acts, Plaintiff is in greeat fear of exercising his First Amendment Rights, which includes, but is not limited to: 1) Being placed in fear of loss of prison employment; 2) receiving contrived misconduct, and 3) any other adverse action personally  may engage in.

364. Plaintiff avers defendant Safa's acts of retaliation were sufficient to deter Plaintiff; a person of ordinary firmness, from exercising his constitutional rights.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other relief this Honorable Court deems appropriate.

## COUNT XX  - STATE CREATED ZONE-OF-DANGER
## U.S. CONST. AMEND. VIII; 42 U.S.C. §1983

365. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

366. At all times relevant as stated elsewhere in this complaint, the Plaintiff and defendant were in a relationship where such actions by the defendant left Plaintiff in such a way as  to leave the Plaintiff vulnerable to a foreseeable injury during which placed the Plaintiff in danger of a foreseeable injury and the Plaintiff was a foreseeable victim of the defendant's acts in a tortsense.

367. At all times relevant as stated elsewhere in this complaint, defendant acted with the requisite degree of culpability in failing to protect Plaintiff.

368. Defendant placed Plaintiff in eminent exposure to immediate physical harm eminating from the actions of the defendant tortfeasor which placed the Plaintiff - a discreet individual - in constant fear of foreseeable injury and/or harm of assault.

369. At all times relevant as stated elsewhere in this complaint, the defendant knew of the risk he created by his words, written and oral, and deliberately disregarded the foreseeable danger to Plaintiff.

370. The actions of defendant was the substantial factor causing Plaintiff to said sensory experience and without the defendant's actions, the Plaintiff would not have been placed in this elevated risk of injury.

371. The defendant was the intervening cause in Plaintiff sensory experience of being placed in this elevated risk of injury without the proper standard of care, custody, control,

security, and well-being that was the statutory obligation of defendant.

372. Plaintiff is a member of a discrete class of persons subjected to the potential harm brought about by the defendant's actions.

373. Defendant used his authority to create an opportunity which otherwise would not have existed for the specific harm to occur and defendant affirmatively acted to create the risk which resulted in the harm to Plaintiff.

374. The actions of defendant evince a willingness to ignore a foreseeable danger and/or risk, which was foreseeable, did not exist prior to defendant's actions, and was elevated by defendant's malfeasance.

375. The defendant's negligence resulted in a sensory experience that caused Plaintiff mental distress.

376. Defendant was not acting within the scope of his employment/duties when maliciously and sadistically placing Plaintiff at risk of assault.

377. As a direct or proximate result of defendant's acts, the Plaintiff faced a particular threat greater than that faced by the inmate public at large and the defendant was aware of said increased danger to Plaintiff.

378. As a direct result of defendant's reckless and negligent conduct, Plaintiff sustained physical injuries including, but not limited to, panic attacks, self-harm, embarrassment, humiliation, harassment, intimidation, ostracization, GastroEsophageal Reflux Disease (GERD), Post-Traumatic Stress Disorder (PTSD), hypertension, heart palpitations, chest pains, constipation, anxiety, worry, depression, insomnia, a complete disfunction of Plaintiff's circadian rhythm, loss of enjoyment of life, damage to reputation, mental anguish and distress.

379. As a direct result of defendant's reckless and negligent conduct, Plaintiff has suffered and will continue to suffer great pain, embarrassment, mental anguish, and loss of the enjoyment of life.

380. As a direct result of defendant's reckless and negligent conduct, Plaintiff has expended and will be required to expend large sums of money for medical services and treatment of the physical and mental injuries described herein and throughout the Complaint.

381. As a direct result of defendant's reckless and negligent conduct, Plaintiff has been and will be deprived of earnings.

382. Plaintiff's injuries, as herein set forth, were directly and proximately caused by the carelessness, negligence, and deliberate indifference of defendant, and included but are not necessarily limited to the injuries described throughout this Complaint, all of which have continued to the present, are permanent in nature, and are expected to continue throughout Plaintiff's lifetime.

383. As a direct result of the aforementioned injuries, Plaintiff has suffered, and will continue to suffer for an indefinite time in the future, great physical pain and mental anguish, to his great detriment and loss.

384. As a further result of the aforementioned injuries, Plainitff has suffered a marked loss of earnings and depreciation of his earning capacity, and will continue to suffer such loss and depreciation for an indefinite time in the future, to his great detriment and loss.

385. As a further result of the aforementioned injuries, Plaintiff has been unable to attend to and perform his usual and daily duties, occupation, avocations, and labors, and will continue to be so disabled for an indefinite time in the future, to his great detriment and loss.

386. As a further result of the aforementioned injuries, Plaintiff was caused to and did suffer bodily and personal injury, including but not limited to, mental anguish, loss of capacity for the enjoyment of life, extensive medical care, treatment and costs associated therewith and the loss of past and future earning capacity. These losses are permanent and continuing in nature.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other relief this Honorable Court deems appropriate.

## COUNT XXI - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**AND/OR**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**RESTATEMENT (SECOND) OF TORTS; 42 U.S.C. §1983**

387. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

388. Pleading in the alternative, and/or both jointly and/or severally, the following causes of action(s) are alleged: Intentional Infliction of Emotional Distress - Restatement (Second) of Torts §46 - _Papieves v. Lawrence, 437 Pa. 373, 263, A.2d 118 (1970)_; Negligent Infliction of Emotional Distress - Restatement (Second) of Torts §436(1) - _Toney V. Chester Co. Hosp., 36 A.2d 83, 95 (Pa. S. Ct. 2011)._

389. At all times relevant hereto, Plaintiff and defendant were in a care-dependent/care-provider relationship extending many years.

390. At all times relevant hereto, defendant knew with substantial certainty that severe emotional distress would be produced by his conduct.

391. Plaintiff being incarcerated, and having no other viable alternative to entrust, the defendant knew the Plaintiff relied solely on the defendant for care, custody, control, security, and well-being during difficult times, and relied on defendant for his supervisory role.

392. The defendant, with the above knowledge, and being motivated by hate, had knowingly used Plaintiff's trust and precarious situation, and Plaintiff's reliance on defendant, to gain Plaintiff's trust, thus create an opportunity to intimidate and harass the Plaintiff.

393. The defendant knowingly and maliciously defamed the Plaintiff, and did so for his own amusement in hopes others would inflict physical pain on Plaintiff and/or to cause severe emotional distress to Plaintiff.

394. It is alleged the defendant at all times relevant, intended to cause foreseeable harm to Plaintiff in retaliation for Plaintiff exercising his Constitutional rights.

395. At all times relevant, and as stated elsewhere in this complaint, the defendant had a sworn duty and had entered into a contract for the benefit of Plaintiff, to provide care, custody, control, security, and well-being, and withheld all of the above for the sole purpose of

instilling fear in the Plaintiff.

396. The defendant, has, and continues to withhold said provide care, custody, control, security, and well-being, thus breaching his agreements/contracts - written, express and implied - and those which Plaintiff fully relied upon.

397. As a direct and proximate result of defendant's actions and omissions, the Plaintiff went into a deep depression - a state of mind from which Plaintiff continues to receive treatment and has yet to recover from.

398. At all times relevant, and as stated elsewhere in this Complaint, the defendant owed a duty of care to Plaintiff, knowingly his statutory obligations as a sworn officer, and/or through written/oral contracts made to provide said care, custody, control, security, and well-being.

399. Plaintiff avers that the defendant had so betrayed Plaintiff - had knowingly and intentionally left Plaintiff so destitute - that such conduct cannot be tolerated in a civil society.

400. Defendant knew by leaving Plaintiff to suffer without provide care, custody, control, security, and well-being, the Plaintiff would not secure a proper emtoionally stable future, which may drive the Plaintiff to attempt suicide.

401. Defendant's conduct was so outrageous and extreme, that defendant had to know it would devastate Plaintiff to the point of causing severe emotional distress to push him to the point of suicide, and did so with such knowledge - and with a cold and callous heart - despite knowledge of Plaintiff's already documented precarious mental and emotional state caused by dealing with the stress of managing incarcerated life, and that of which no reasonable man could be expected to endure under the circumstances from which Plaintiff existed.

402. Defendant knew that withholding care, custody, control, security, and well-being, would cause foreseeable harm to Plaintiff, and that such harm would cause Plaintiff great anxiety, and did so notwithstanding.

403. Defendant's conduct was so outrageous, and in reckless disregard for Plaintiff's feelings, dignity, and/or fundamental rights as a human being.

404. Defendant's actions were such that they so shocked the conscience and has no place in our society as defendant's actions and/or omissions also constitute a crime.

405. Defendant's conduct, as set forth herein and throughout this Complaint was so outrageous in character and so extreme in degree as to fall outside the bounds of decence and is to be regarded as intolerable in the community.

406. Defendant's negligent and reckless course of conduct placed Plaintiff in continual fear and caused him severe emotional distress.

407. Plaintiff's physical injuries include, but are not necessarily limited to, panic attacks, self-harm, embarrassment, humiliation, harassment, intimidation, ostracization, GastroEsophageal Reflux Disease (GERD), Post-Traumatic Stress Disorder (PTSD), hypertension, heart palpitations, chest pains, constipation, anxiety, worry, depression, insomnia, a complete disfunction of Plaintiff's circadian rhythm, loss of enjoyment of life, damage to reputation, mental anguish and distress.

408. By engaging in the acts described herein and throughout this Complaint, defendant engaged in extreme and outrageous conduct and intentionally inflicted severe emotional distress upon Plaintiff.

409. As a direct and proximate result of the acts and/or omissions of defendant as set forth herein and throughout this Complaint, Plaintiff has in the past been required, and may in the future require, medicine, medical care, psychological care, psychiatric care, and other treatment in order to cure himself of the injuries he has sustained; has in the past been obliged, and may in the future be obliged, to expend various sums of money for such medical care and treatment.

410. As a further direct and proximate result of the acts and omissions of defendant, as set forth herein and throughout this Complaint, Plaintiff has been caused to suffer severe emotional distress, humiliation, embarrassment, and financial loss.

411. As a result of the actions and omissions of defendant, Plaintiff suffered injuries, required medical treatment, and in the future will continue to need such medical treatment, lost time from work, and resultant lost wages, and suffered the fear and embarrassment associated with said injuries.

412. As a direct result of defendant's negligent infliction of emotional distress, Plaintiff

57

sustained shock and injury to his nerves, nervous system, and other severe and serious injuries, all of which are or may be permanent in nature.

413. As a direct result of defendant's negligent infliction of emotional distress, Plaintiff has suffered and will continue to suffer great pain, embarrassment, mental anguish and loss of the enjoyment of life.

414. As a direct result of defendant's negligent infliction of emotional distress, Plaintiff has expended and will be required to expend large sums of money for medical services and treatment of the injuries described herein and throughout this Complaint.

415. As a direct result of defendant's negligent infliction of emotional distress, Plaintiff has been and will be deprived of earnings.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other relief this Honorable Court deems appropriate.

## COUNT XXII - OUTRAGEOUS CONDUCT
## RESTATEMENT (SECOND) OF TORTS; 42 U.S.C. §1983

416. Plaintiff repeats and re-alleges each and every allegation contained herein and throughout this Complaint with the same force and effect as if set forth herein at length.

417. The actions and omissions of the defendant were so outrageous, willful, wanton and in reckless disregard to the health and well-being of Plaintiff as to entitle Plaintiff to punitive damages.

418. As a direct and proximate result of defendant's negligence and willful and wanton conduct, Plaintiff has incurred physical ailments as set forth throughout this Complaint.

419. As a further direct and proximate result of defendant's negligence and willful and wanton conduct, Plaintiff has suffered and continues to suffer permanent injuries as set forth throughout this Complaint.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other relief this Honorable Court deems appropriate.

## COUNT XXIII - GROSS, WILLFUL AND WANTON MISCONDUCT

## RESTATEMENT (SECOND) OF TORTS; 42 U.S.C. §1983

420. Plaintiff hereby incorporates each and every paragraph supra, with the same force and effect as if set forth herein at length.

421. The defendant is liable to the Plaintiff for his gross, willful, and wanton misconduct in his fraudulent misrepresentation as a provider of care, custody, control, safety, security, and well-being to Plaintiff, as well as concealing the detrimental aspects of Plaintiff's true work and personal ethic.

422. As a result of the gross, willful, and wanton misconduct of defendant, Plaintiff is entitled to punitive and compensatory damages.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other relief this Honorable Court deems appropriate.

## COUNT XIV - PUNITIVE DAMAGES

## RESTATEMENT (SECOND) OF TORTS; 42 U.S.C. §1983

423. Plaintiff hereby incorporates each and every paragraph supra, with the same force and effect as if set forth herein at length.

424. At all times relevant, and as stated elsewhere throughout this Complaint, the

defendant had through and by deception and fraud, carried out an outrageous betrayal of trust, did so by retaliating against and defaming Plaintiff for the sole purpose of causing injury to Plaintiff.

425. The defendant engaged in conduct as described elsewhere in this Complaint, that was so outrageous, that it is incompatible with the moral standards of today's society.

426. The defendant's intentional retaliation, slander and libel was intentional, pre-meditated, contrived, and done by building years of trust while supervising Plaintiff, and then effectuating a scheme to defame and injure Plaintiff.

427. By engaging in the acts set forth herein and throughout this Complaint, defendant intentionally, willfully, and wantonly inflicted foreseeable harm upon Plaintiff.

428. Defendant should be punished for the acts set forth herein and throughout this Complaint so that defendant and all others who may come to know the events cited will never again be tempted to engage in such acts or conduct.

429. The negligence and breaches of defendant as set forth herein and throughout this Complaint were reckless, outrageous, wanton, willful, and in knowing disregard of and for the care, custody, control, safety, security, and well-being of Plaintiff.

430. The actions of defendant as set forth herein and throughout this Complaint were reckless, outrageous, wanton, willful, and in knowing disregard for the value of human life.

431. Defendant is liable to the Plaintiff for his gross, willful, and wanton misconduct in his misrepresentations, which was intended to, and did deceive the Plaintiff into his false sense of care, custody, control, safety, security, and well-being of Plaintiff.

432. The defendant's intentional conduct rose to a level that it should be met with the full force of the law, including punitive damages, as a deterrent to said defendant and other would-be fraudulent fiduciaries of care, custody, control, safety, security, and well-being.

WHEREFORE, Plaintiff demands judgement against defendant for an amount to be determined by jury upon this Count, including nominal, compensatory, and punitive damages, with damages for pain and suffering, and mental and emotional anguish, together with costs, attorney fees, pre- and post-verdict interest, delay damages, single-cell housing, and any other

relief this Honorable Court deems appropriate.


<u>VIII. JURY TRIAL DEMAND</u>


433. Plaintiff demands a jury trial on all issues and counts so triable.


Respectfully submitted,


Dated: <u>November 20, 2024</u>

Brian Thompson/JQ-0773
(Mail By Defendants)
SCI-PHX
P.O. Box 33028
St. Petersburg, FL 33733

61

# EXHIBIT 'A'

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

FOR OFFICIAL USE
1024796
GRIEVANCE NUMBER

## OFFICIAL INMATE GRIEVANCE

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| MS. OWENS / MS. ORLANDO | SCI-PHOENIX | 4/3/2023 |

| FROM: (INMATE NAME & NUMBER) | SIGNATURE OF INMATE: |
|---|---|
| BRIAN THOMPSON, JQ0773 | Mr. Thompson |

| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: |
|---|---|
| HEAVY DUTY BLOCK WORKER, F-B UNIT | F-B-2027-01 |

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

Grievant files this grievance in Good-Faith, with the expectations of no retaliation being taken against him in any way, shape or form per the rules of DC-804 (B), i.e.: Bogus Misconduct either now or in the future, transfer to another Housing Unit or Facility, change of Work Assignment, etc. Grievance is filed as a violation of Grievant's First Amendment right against retaliation, and Freedom of Speech.

On March 29, 2023, when grievant received his breakfast tray. Grievant went to a table to check the tray for proper content. As grievant was checking the tray, Sgt. Safa screamed and yelled at grievant to, "take it to your cell." Grievant replied that, "I'm filing a grievance for screaming and yelling at me." Sgt. Safa said, "go ahead." On March 31, 2023 after the morning count cleared, grievant pushed the button to come out to perform his Work Assignment. COI Watson did not open grievant's door. When the top tier came out to get breakfast trays, grievant asked COI Watson, "Why didn't you open the door when I pushed the button so I could come out to work?" COI Watson asked grievant, "where do you work?" Grievant stated, "I am a Block Worker. My name and picture are in the Block Workers book." COI Watson grabbed the Book and started looking at the pictures. She asked grievant, "what shift do you work?" I stated, "6:00am - 12:00pm." As COI Watson was looking at the pictures she was shaking her head as in "no" your picture isn't in the book. I asked her, "Am I a Block Worker?" COI Watson said, "No, your picture, name ain't in the book." By this, I have Cont.

Page
Attach

B. List actions taken and staff you have contacted, before submitting this grievance.

I spoke to Unit Manager, Baldwin on 3/29/23 regarding this matter.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____
Signature of Facility Grievance Coordinator

_____ 4/4/23
Date

WHITE Facility Grievance Coordinator Copy      CANARY File Copy      PINK Action Return Copy
GOLDEN ROD Inmate Copy

( Continued - Page 2 )

been summarily fired on Wednesday, 3/30/23, my day off. [I am formally requesting that the "F-B Unit" video of 3/30/23 be saved.]

Grievant's picture and name have been in the Block Workers Book since I came into Phoenix on July 14, 2018. I've been a Block Worker on F-B Unit ever since. I work on my days off (Wednesday & Thursdays). I sweep and spot mop on Wednesdays, on Thursdays I help out with the floors as well. I urge the Grievance Coordinators, Superintendent or others involved in this matter to view the video for the month of March. I am not problematic. I have not had a Misconduct nor been in the RHU in 17½ years. I've been volunteering on my days off for years to help keep the Unit clean. The video from each month and year will prove that. There is no question that Sgt. Safa retaliated against grievant for saying. "I'm filing a grievance for yelling at me." I was punished for exercising my First Amendment Right to Freedom of Speech. Sgt. Safa has violated the Code of Ethics, Sections (A)(1), (B)(1)(10)(22)&(29). Grievant can show a nexus; a causal link of events that happened. Only after grievant said what he said to Sgt. Safa, was when grievant was demoted, fired and/or taken off the Block Workers roster/list and his picture and name removed from the block Workers book. The timing proves this. Additionally, grievant filed a grievance against Sgt. Safa on 3/29/23.

Grievant has not broke any Department or Facility rule. Nor was grievant issued any Class (1) or Class (2) Misconducts, no Formal or Informal Resolution hearing, No Warning, No Reprimand, No loss of any privileges and/or any reason or justification as to why grievant's name and picture was taken out of the Block Workers Book. Grievant was never told why he was demoted and/or fired. Grievant was punished for exercising his rights and for filing a grievance. Administration is fully aware of Sgt. Safa's problematic, disrespectful and unprofessional behaviors. Sgt. Safa has been removed from numerous Housing Units and had numerous grievances filed against him. Grievant has spoken with inmates who are willing to provide grievant with affidavits, copies of grievances they filed against Sgt. Safa which substantiates his behaviors, and said inmates are willing to come to court to testify. Additionally, a causal nexus exists in the events which happened in that Grievant was the only Block Worker, demoted, fired, etc. My worker status was the only worker changed. Begging the question, "Why didn't any other block worker's status change?"

Stated relief I am seeking:

I request a thorough and complete investigation into the retaliatory actions taken against and the mistreatment of Grievant. I'll be requesting The Office of Professional Responsibility (OPR) and other impartial individuals investigate this matter. I am requesting that Sgt. Safa be removed from this Housing Unit by Unit Manager, Baldwin, or other Superior Officer and be reassigned to an appropriate post as soon as possible. Additionally, grievant seeks $250,000 in compensatory damages, $250,000 in punitive damages, including all other damages allowable under law. Both jointly and severally, including any cost of litigation, court cost, delay damages, and/or attorney fees. Lastly, I request full compensation for all days missed, days off, and to be immediately returned to my Work Assignment to include my name and picture be placed back in the Block Workers book. [Grievant demands that the video footage from F-B Unit on the morning from 7:00am - 7:45am from March 30, 2023 be preserved as it constitutes evidence in this imminent litigation.]

# EXHIBIT 'B'



# Initial Review Response

SCI Phoenix
1200 Mokychic Drive
Collegeville, PA, 19426

04/19/2023 01:40

| | | | |
|---|---|---|---|
| Inmate Name: | THOMPSON, BRIAN K | DOC #: | JQ0773 |
| Facility: | Phoenix | Unit Location: | F / B |
| Grievance #: | 1027496 | | |

This serves to acknowledge receipt of your grievance to the assigned Grievance Officer.  The response is as follows:

**Decision:Grievance Denied**

It is the decision of this Grievance Officer to uphold, deny, or uphold in part/deny in part the inmate's initial grievance.  This response will include a brief rationale, a summary of the conclusion, any action taken to resolve the issue(s) raised in the grievance, and the relief sought.

**Response:**

After speaking with both you and Sgt Safa it was explained that you were not fired and that due to the amount of workers that are on the unit there was a rotation and that you were still going to be utilized but in more limited compacity to get other people out working and to allow you your days off from being a block worker, with you still continuing to be paid and that was not an acceptable answer for you and you demanded to still be out of your cell even on your days off.

☑ **Frivolous:**

the tier the inmate is housed on is eating in the cell and was supposed to receive his tray and report back to his cell and inmate attempted to sit at the table and was told to return to his cell. Inmate was not fired he was just told that he was going to be used more limited and not be allowed to work on his days off.

| | |
|---|---|
| Signature: | |
| Name: | J. McCafferty |
| Title: | |
| Approver: | K. Owens /eo |
| Date: | April 19, 2023 |
| CC:  Facility Grievance Coordinator | |
| DC-15 | |

# EXHIBIT 'C'

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

FOR OFFICIAL USE
1032153
GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR Ms. OWENS | FACILITY: SCI-PHOENIX | DATE: 5/1/2023 |
|---|---|---|
| FROM: (INMATE NAME & NUMBER) BRIAN THOMPSON, JQ0773 | SIGNATURE OF INMATE: *Brian Thompson* | |
| WORK ASSIGNMENT: HEAVY DUTY BLOCK WORKER | HOUSING ASSIGNMENT: F-B-2027-01 | |

**INSTRUCTIONS:**
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of
   staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two
   pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

Grievant files this grievance in good-faith, with the expectations of no retaliation
being taken against me in any way, shape, or form per the rules of DC-ADM 804(H),
i.e.; bogus misconduct either now or in the future, transfer to another housing unit
or facility, change of work assignment, etc. Grievance is filed as a violation of
grievant's First Amendment Right against retaliation; Eight Amendment Right against
being subject to cruel and unusual punishment; and the Fourteenth Amendment Right to
due process and equal protection under the laws. This and aforementioned for not
being treated equal as the rest of the similarly situated Block Workers.
On April 26, 2023 grievant went into the counselor, Ms. Roulhac's, office during
walk-in hours. I asked Ms. Roulhac to check my account to see if there had been any
deductions for my attorney, because I had mailed him some documents. Ms. Roulhac
checked and said no, there are no deductions. She then handed me a DOC memo for a
attorney-client phone call I had coming up this week. I asked Ms. Roulhac about my
job? She said, "I don't know what's going on with that situation." She went on to say
that I do have your Work Report dated April 20, 2023, and Sgt. Safa gave you a
negative report. I asked her for a copy. Ms. Roulhac said she couldn't give me a copy
and for me to ask Ms. Baldwin.

- See Continued Page 2 -

B. List actions taken and staff you have contacted, before submitting this grievance.

Spoke To Ms. BAldwin

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____                          _____
Signature of Facility Grievance Coordinator                    Date

WHITE Facility Grievance Coordinator Copy     CANARY File Copy     PINK Action Return Copy
GOLDEN ROD Inmate Copy

**DC-ADM 804, Inmate Grievance System Procedures Manual**
**Section 1 – Grievances & Initial Review**                    **Attachment 1-A**
Issued: 1/26/2016
Effective: 2/16/2016

BRIAN THOMPSON, JQ0773, F-B-2027-01, HEAVY DUTY BLOCK WORKER, GRIEVANCE  5/1/2023

- Continued Page 2 -

On April 27, 2023, the next day, I saw Ms. Baldwin and asked her about my negative Work Report and requested a copy. She said, "No I can't give you a copy and she needs to speak with Sgt. Safa." Grievant never had a negative Work Report in 17½ years. Sgt. Safa only filed this negative Work Report on grievant because I previously filed grievances on him on 3/29/2023, 4/3/2023 & 4/15/2023, No.'s 1027316, 1027496 & 1029617, respectively. Bringing the obvious question of "Why didn't Sgt. Safa file a negative Work Report on me 6 or even 3 months ago: THIS IS RETALIATION!

Both Ms. Roulhac and Ms. Baldwin stated that they could not give me a copy of my Work Report submitted by Sgt. Safa on April 20, 2023. According to DC-ADM 816 E USE OF PERFORMANCE EVALUATIONS "One month from the first day on a work assignment, each inmate shall be evaluated by his supervisor who will use Form DC-48B, Inmate Progress Report. Thereafter, at the request of the Unit Management Team, whenever the inmate is being considered for promotion/demotion, and at least once every twelve months, a written performance evaluation shall be made. Every rating is shown to and discussed with the inmate, who [SHALL] be provided with a copy. Each form shall be completed and cover these subjects: attendance, attitudes, comments by the supervisor, initiative, safety, and work habits.

Sgt. Safa, intentionally filed a negative Work Report on grievant as retaliation and because he knows I have my Commutation papers filed, I will be staffed soon and I need a positive Work Report. This is also why Lt. McCafferty and Sgt. Safa refuse to allow me to work. I am formally requesting that - The video imagery of the Month of March 2023 be preserved as (It will show me working each and every one of my assigned work days, and also on Wednesdays & Thursdays - my days off). How can I have a negative Work Report. I have an excellent attendance, good attitude, work habits and additionally, I volunteer on my days off.

Sgt. Safa maliciously and intentionally filed a negative Work report demonstrating his malicious intent and state of mind, further revealing his hostility and measures of retaliation towards and against grievant. Sgt. Safa has committed a crime by violating Title 18 § 4911 Tampering with Public Records or Information which states: "A person commits an offense if he/she; knowingly make a false entry in, or false alteration of any record, document or thing belonging to or received or kept by the government." Further he has violated The Code of Ethics (Section B-22) which states: "Reports submitted by employees shall be truthful, no employee shall knowingly enter, inaccurate, false or improper information in any DOC record." He has also violated The Civil Service Act & Governor's Code of Conduct, #1980-18.

I am filing a private criminal complaint with the Attorney General's Office, The Governor's Office and The Office of District Attorney of Montgomery County. Seeking relief: (1) To be compensated $250,000 dollars in compensatory damages. (2) Sgt. Safa be removed from (F) Housing Unit and reassigned to a more suitable post and be temporarily suspended without pay for his conduct and violations as allowed under the rules of The Civil Service Code(s) of punishments. (3) The falsified Work Report dated 4/20/23, submitted by Sgt. Safa be preserved as it is evidence in this matter. (4) Following investigation, review and resolution, I request a corrected ('positive' Work Report) be filed by Ms. Baldwin or appropriate staff and a copy of both, the falsified and corrected, Work Report(s) be provided to me.

- End -

# EXHIBIT 'D'



# Initial Review Response

SCI Phoenix
1200 Mokychic Drive
Collegeville, PA, 19426

05/12/2023 09:51

| | | | |
|---|---|---|---|
| **Inmate Name:** | THOMPSON, BRIAN K | **DOC #:** | JQ0773 |
| **Facility:** | Phoenix | **Unit Location:** | F / B 2027 |
| **Grievance #:** | 1029617 | | |

This serves to acknowledge receipt of your grievance to the assigned Grievance Officer. The response is as follows:

### Decision:Grievance Denied

It is the decision of this Grievance Officer to uphold, deny, or uphold in part/deny in part the inmate's initial grievance. This response will include a brief rationale, a summary of the conclusion, any action taken to resolve the issue(s) raised in the grievance, and the relief sought.

### Response:

Inmates are not retaliated against for filling grievances. I spoke with lieutenant McCafferty about the conversation you say took place on the date in question. It's a staff members responsibility to speak with a person or inmate while assigned a grievance to get the facts for a proper response. As for the statements you said the sergeant made about you and your cellmate there is no way to substantiate your allegations at this time. No evidence of disrespect, unprofessionalism, etc. Grievance Denied and no relief will be awarded.

**Signature:**

**Name:**          K. Young

**Title:**

**Approver:**      K. Owens  ko

**Date:**          May 12, 2023

CC:  Facility Grievance Coordinator
     DC-15

---

**DC-ADM 804, Inmate Grievance System Procedures Manual**

**Section 1 - Grievances & Initial Review, Attachment 1-D**          Issued: 1/26/2016  Effective: 2/16/2016

JQ0773      Grievance #:1029617

THOMPSON, BRIAN K                                              Page1 of 1

# EXHIBIT 'E'

## AFFIDAVIT

I, Michael Ortiz, being duly sworn, deposes and states the following:

1).    The affiant avers that his legal name is Michael Ortiz, and is currently incarcerated at SCI-Phoenix.

2).    On April 12, 2023 at approximately 10:45 am, while on FB Housing Unit, I was talking with Sgt. Safa, when I noticed Lt. McCafferty standing at the cell door of cell 2027. I asked Sgt Safa, "what's going on up there"? motioning to cell 2027 and Sgt. Safa answered and replied, "them two rats in 2-27 keep filing fucking grievances on me".

Respectfully submitted,

*Michael Ortiz* 5-2-23
Michael Ortiz  QN-8742
1200 Mokychic Drive
Collegeville, PA. 19426

## VERIFICATION

I, Michael Ortiz, have read the foregoing documents and hereby verify that the matters alleged herein are true, except to those matters alleged upon information and beleif, and, to those matters I beleive to be true. I certify under the penalty of perjury that the foregoing is true and correct to 18 Pa. C.S.A. § 4904; 28 U.S.C. § 1746.

Respectfully submitted,

*Michael Ortiz* 5-2-23
Michael Ortiz  QN-8742
1200 Mokychic Drive
Collegeville, PA. 19426

# EXHIBIT 'F'

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

FOR OFFICIAL USE
_1029607_
GRIEVANCE NUMBER

## OFFICIAL INMATE GRIEVANCE

| TO: FACILITY GRIEVANCE COORDINATOR MS. OWENS | FACILITY: SCI-Phoenix | DATE: 4-15-23 |
|---|---|---|
| FROM: (INMATE NAME & NUMBER) Brian Thompson - JQ-0773 | SIGNATURE OF INMATE: Mr. Brian Thompson | |
| WORK ASSIGNMENT: Block Job | HOUSING ASSIGNMENT: FB-2027 | |

**INSTRUCTIONS:**
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking. Pg 1 of 2

Grievant, files This grievance in good-faith, With The expectation of No retaliation being Taken Against grievant in any way, shape or form. ie, Bogus misconduct either Now or in the future, transfer to another Housing unit or facility, change of Work Assignment/Time. Grievant files This grievance As a violation of grievants First amendment right against retaliation. Also in violation of grievant's fourteenth amendment rights (due process) For DISCRIMINATION And SLANDER. On April 12, 2023 About 10:30am-10:45am, LT. McCaffrey came to grievant's cell to Ask grievant About grievance #1027496. That grievant filed on April 3, 2023 Against SGT. Safa. As, The Side yard Was coming into the Housing unit, my cellie Joel muir #EB-3985 heard SGT. Safa, SAY to another inmate, "Those guys in 2027 Are rats, They filed grievances on me. This Ain't Hearsay This is

B. List actions taken and staff you have contacted, before submitting this grievance.

Spoke SGT. Webb

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____
Signature of Facility Grievance Coordinator

4/11/07
Date

WHITE Facility Grievance Coordinator Copy     CANARY File Copy     PINK Action Return Copy
GOLDEN ROD Inmate Copy

*be should corner's office*

**DC-ADM 804, Inmate Grievance System Procedures Manual**
**Section 1 – Grievances & Initial Review**
Issued: 1/26/2016
Effective: 2/16/2016

**Attachment 1-A**

Page 2 of 2

direct evidence. prior to This incident, grievant filed a grievance on SGT. Safa on march 29, 2023. grievance #1027316. my cellie Joel muir #GB-398. filed grievances on SGT. Safa on march 29, 2023, Grievance #1027200, and o, april 2, 2023 Grievance #1027318. The Sentiment made by SGT. Safa, "Those guys in 2027 are rats, They filed grievances on me." This violated grievant's First amendment rights, because of SGT. Safa continued pattern of antagonism of retaliation. This was said with malicious intent, vengeance and punitory, by Labeling grievant And my cellie Joel muir, as rats, and spreading rumors. This was said with The intention grievant, and my cellie Joel muir would be assulted by other prisoner's and also to assassinate my and my cellie character. SGT. Safa, also violated grievant's Fourteenth amendment rights to (Due proces: equal protection. where SGT. Safa slandered grievant's reputation. he knew or should have known what he said was false. SGT. Safa, also is Being Discriminatery, Because he ain't saying other inmates are rats for filing grievances against him. Nor is SGT. Safa Treating grievant As equal as other inmates. ~~~~~~~~~~~~~~~~~~~~~~~~ ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ Administration is fully aware of SGT. Safa's problematic, disrespectful and unprofessional behavior. But, yet Nothing is done, To SGT. Safa. He has a Terrible work record with numerous complaints, and administration keep protecting him. And hiding his complaints. I request SGT. Safa Record of complaints be investigated. Relief: request A Thorough and complete investigation into the retaliatory actions taken against and the mistreatment of grievant. SGT. Safa work record be investigated by individuals who don't work for the Doc. $250,000 in compensatory damages, SGT. Safa be moved off F-Block. Attorney fees for cost of Litigation. request Governors office investigate SGT. Safa Record of grievances filed on him. I'll Also

Brian Thompson, JQ-0773
Sci-Phoenix
P.O. Box 244
Collegeville, PA 19426





quadient
PRIORITY MAIL
IMI
$009.65⁰
11/21/2024 ZIP 19426
043M31248366
US POSTAGE

TO: THE United States District Court
For the EASTERN District of Pennsylvania
"Clerk of Courts"
601 Market Street
Philadelphia, PA 19106-1774



PRIORITY® MAIL
UNITED STATES POSTAL SERVICE
Visit us at usps.com

Label 107R, January 2008